# DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

**PAMELA and STUART KESSLER, H/W**
*Plaintiffs,*
vs.

**CITY OF KEY WEST**, A Florida Municipality,
1300 White Street
Key West, FL 33040
*and*
**Ronald Ramsingh**, Esq.,
**George Wallace**, Esq.,
**James K. Scholl**, (City Manager),
**Greg Veliz** (Assistant City Manager),
**Jim Young** (Director, Code Compliance),
**Doug Bradshaw** (Port and Marina Services Director),
**Karen M. Olsen** (Deputy Port and Marine Services Director),
**Mark Tait** (Marina Manager)
All agents or employees of the City of Key West, who are being sued personally,
individually, and/or as agents or employees of the City of Key West.
c/o 1300 White Street
Key West, FL 33040,
*and*
**Douglas N. Higgins, Inc.**
a Michigan Corporation with principle offices located at 3390 Travis Point Road,
Suite A, Ann Arbor, Michigan, 44108, a foreign corporation.
*and*
**Paul R. Waters**
A regional manager for Defendant Douglass N. Higgins, Inc. with offices located
at 5009 5th Ave. #3, Key West, FL 33040
*Defendants*

Case No.:

19-cv-10030-Martinez/Otazo-Reyes

FILED BY _MDA_ D.C.

FEB 25 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR CIVIL DAMAGES, SANCTIONS FOR CIVIL AND CRIMINAL CONTEMPT OF FEDERAL COURT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs, Stuart and Pamela Kessler ("Kesslers") hereby sue Defendants,

CITY OF KEY WEST ("City"), the following employees of City personally and in their official capacities: Ronald Ramsingh, Esq., George Wallace, Esq., James K. Scholl (City Manager), Greg Veliz (Assistant City Manager), Jim Young (Director, Code Compliance), Doug Bradshaw (Port and Marina Services Director), Karen M. Olsen (Deputy Port and Marine Services Director), Mark Tait (Marina Manager) and Douglas N. Higgins, Inc. ("Higgins"), a Michigan Corporation, and Paul R. Waters, an agent/employee of Defendant Higgins, personally and as an employee/agent of Higgins.

## NARRATIVE SUMMARY OF THIS CASE[1]

This case involves the violation of the Rules and prior Order of this Honorable Court, of the Civil Rights and harassment via abuse of process of the Kesslers by the City of Key West ("City"), and of the tragic loss of their home and most of their personal belongings. The matters raised in this Complaint began with a rather seemingly benign alleged Building Code Violation and the subsequent enforcement process. Since 2004, the Kesslers' primary residence was a floating home they owned, which was docked in a Marina operated by the City of Key West and part of a community of about 100 floating homes.

---

[1] This executive summary is intended to provide a summary of the matter in as brief a fashion as possible. It is not intended as a complete recitation of the facts, nor to explain the involvement of some of the Defendants, information which is fully set forth in the body of the Complaint.

The material alleged Code violation involved how "secure" the reserve and safety floatation (which was all in excess of the required floatation) was. When the City filed for a hearing before the Code Enforcement Special Magistrate to enforce the alleged violation, the Kesslers, believing the Code Enforcement process was defective and violated their Constitutional rights, filed and served a Notice of Removal to Federal Court on January 25, 2017. (P.E. #1) ( This exhibit and all following referenced exhibits are attached hereto unless otherwise noted.) The City ignored the automatic stay attendant to the filing of the Notice of Removal and continued the enforcement process without first asking for relief from the stay or remand of the case.  The Kesslers thereafter filed a Motion to Dismiss the "removed" action with this Honorable Court. The City filed no response to the Motion to Dismiss, and this Honorable Court on June 30, 2017, Dismissed the Code Enforcement matter With Prejudice (P.E. #2). The City's response to this Honorable Court's Order was to ignore it and increase the harassment of the Kesslers by filing a new Eviction Action in Monroe County State Court (Florida), based solely on the alleged Code Violation that had just been dismissed by this Honorable Court.

Based on the intimidation from the City, the City's persistent flaunting of the rule of law, and advice of counsel the Kesslers had retained, the Kesslers removed

the safety and reserve floatation from their home in hope of finding an amicable and peaceful resolution.

The Kesslers also filed a Motion to Dismiss the Eviction Action in Monroe County Court (P.E. #3) based *inter alia* on the legal effect of the automatic stay and the prior action by this Honorable Court.  Before the Motion to Dismiss was scheduled for a hearing in State Court, on September 10, 2017, the Lower Keys and Key West, were struck by Hurricane Irma, one of the strongest hurricanes on record to make landfall in the Lower Keys. As the Kesslers expected, their home remained afloat with only relatively minor damage despite the unwarranted and inadvisable removal of the reserve safety floatation.  The remaining floatation remained secure. Some of their neighbors were not so lucky. The Kesslers' slip had a direct exposure to open water. Eight of nine of the floating homes, with an open water exposure like the Kesslers, sank or were destroyed. Overall, the liveaboard homes, including those in a more protected area, suffered a loss rate of about 25% of the 97 homes.  The irony was that none of the homes that sunk (or any other homes) had building code violations pending.

In the early morning hours of December 3, 2018, the Kesslers' home was struck by a large piece of floating debris[2] still in the water after the hurricane

---

[2] This event is highly suspicious. The pontoons which are integrated into the structure of the home are heavily built, (fiberglass over ¾ inch plywood, with a robust internal superstructure) with a rated penetration resistance in excess of 3000 PSI) and would be highly unlikely to fail or suffer penetration due to a collision with even a very massive object, particularly if the object was only moving with the natural current. This is consistent with the Second Law of

causing a catastrophic hole in one of the four primary integrated pontoons, overwhelming multiple on-board bilge pumps, and causing the vessel to rapidly sink with the Kesslers aboard.  It is beyond doubt that if the safety reserve floatation that the Kesslers were intimidated into removing, had been left in place, their home would not have sunk. Fortunately, the Kesslers were able to evacuate the rising water to get to safety in their pajamas.

Before the hurricane, the Kesslers had evacuated and removed their most valuable and sentimental possessions. After the storm was over and the home was safe, they put their possessions back in the home, so unfortunately most of their personal belongings including photos of their children growing up, their wedding album and other irreplaceable items of sentimental value went down with the much later sinking of their house.

The home's survival of Hurricane Irma proved with actual experience the robust construction of the Kesslers' home. Even though it was the City's own wrongful enforcement that increased the risk of harm and directly resulted in the later sinking, the City continued the Eviction Action against the Kesslers which was now based on an alleged code violation on a home that no longer existed. This was an egregious example of *ipso facto* malicious prosecution.  A hearing on the

---

Newtonian Physics (Force = Mass x Acceleration) which would require that the penetrating object would have to be propelled with considerable speed to cause a large penetration of the Kesslers' home.

Kesslers' Motion to Dismiss the Eviction action was finally held in Monroe County Court on January 19, 2018.  In open Court, Monroe County Judge Mark Wilson agreed with the material assertion by the Kesslers that the prior Federal Action should have prevented the continued enforcement and the Eviction action. Before an adverse Order could be prepared, the City filed a Voluntary Dismissal of the Eviction Action (P.E. #4).

Unable to prevail through the legal process, the Voluntary Dismissal was swiftly followed by a notification from the City of their intent to terminate the Kesslers' lease of the slip effective immediately and without cause.  It is important to note that this action was unprecedented in the roughly 50+ years the City operated the liveaboard marina. The lease contained a provision which gave the Kesslers due process rights in the form of a hearing before the Citizen Port Authority Board if they disagreed with the actions of the bureaucrats. However, the City had disbanded the Port Authority Board some years ago and never amended the lease. The City offered to substitute a hearing before the City Manager. Over the objections of the Kesslers, a hearing was held before the City Manager. At the hearing, the City presented no cause or reason to terminate the Kesslers' lease and admitted in the long history of the Marina that they had never taken such an action before. After the hearing, the City Manager assured the Kesslers that he would not terminate their lease. This oral assertion was followed up with confirming e-mails.

Unable to live with adverse legal rulings and results from administrative hearings, the Individual City Defendants simply resorted to self-help and removed the remaining personal property of the Kesslers without prior notice and without first obtaining any judicial permission or authority.

Having wrongfully taken possession of the Kesslers personal property, the City has made a further mockery of the rule of law by serving a Notice of Intent (dated January 14, 2019) to dispose of the personal property which had been wrongfully removed by the City.

The Kesslers respectfully request that this Court restore the rule of law and allow the Kesslers peace and recovery by enjoining further action by the City against the Kesslers without prior leave of this Honorable Court. Since the City has already shown contempt for the authority of this Honorable Court and its Rules of Court by its past actions, we ask that the Court impose sanctions for past behavior in such kind and amount as will act as a deterrent against future Contempt of this Court. The Kesslers are also requesting recovery of their economic and non-economic losses which resulted from the conduct set forth in the Complaint.

## DEMAND FOR JURY TRIAL

Pursuant to F.R.C.P. Rule 38, the Plaintiffs Demand a Jury Trial

## JURISDICTION AND VENUE

1.  Subject Matter Jurisdiction over Plaintiff's claims against City and its employees is automatically conferred  by the All Writs Act, (28 U.S.C. § 1651) and the Anti-Injunction Act ( 28 U.S.C. § 2283)  as it involves enforcement of a prior Order of this Court (P.E. #2), enforcement of the Rules of Court (automatic stay per 28 U.S.C.1446(d)), Federal Question Jurisdiction (28 U.S.C. § 1331) pursuant to claims of violation of Plaintiff's Civil Rights and Conspiracy to Violate Civil Rights (42 U.S.C. 1983, 1985),  and discrimination and retaliation under the Fair Housing Act and  Section 504 of the Rehabilitation Act of 1973.  Subject matter jurisdiction is also conveyed by the prohibition against retaliatory legal action by a government agency. (*See* Strategic Lawsuits Against Public Participation (SLAPP) (Florida Statute 768.295).  There is probable cause to believe that some of the activities complained of may be the result of activities which are contrary to the RICO Act and which may be substantiated by discovery.

2.   Diversity Jurisdiction is conferred over Defendant Higgins, as it is a foreign Michigan corporation.

3. This Court has *in personam* jurisdiction over the Defendants pursuant to Fla. Stat. 48.193(1)(a), in that they operated, conducted, engaged in, or carried on a business or business venture, had an office or agency, or committed a tortious act in the State of Florida and this Judicial District.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), as the claims arose in this Judicial District, and Defendants are either residents or do business in this Judicial District.

## PARTIES

1.     The Plaintiffs are Stuart and Pamela Kessler h/w who currently reside at 4606 Carlton Golf Drive, Wellington, Florida 33449. Between February 2004 and July 2018, the Plaintiffs resided in a floating home or structure[3] which they owned and was docked at the Key West City Marina at Garrison Bight[4].

2.     The Defendant City of Key West is a Florida Municipality with primary offices at 1300 White Street, Key West, Fl 33040.

3.     The following individuals were at all relevant times agents or employees of Defendant City of Key West, and are being sued personally and in their official capacities: Ronald Ramsingh, Esq. (Asst. City Attorney), George Wallace, Esq. (Asst. City Attorney), James K. Scholl (City Manager), Greg Veliz (Asst. City Manager), Jim Young (Director, Code Compliance), Doug Bradshaw (Port and

---

[3] See *Lozman v. City of Riviera Beach, Fla., 133 S. Ct. 735 (2013)*
The U.S. Supreme Court recognized that floating homes are not navigable vessels and should not and are not subject to Admiralty Law, nor do they need to be "seaworthy" like a vessel on the high seas. Instead, the Court indicated that these homes should be subject to local building code regulation, much like a home on land. In the case of Key West, the floating home regulation is brief and skeletal, and rarely enforced. (For example, while the Key West Code requires a Certificate of Occupancy, we understand that we are one of the few who ever obtained one).

[4] The land and bay bottom where the marina is located was conveyed to the City by the State of Florida in a deed which restricted the use to public purposes. There are, in addition, a series of interlocal agreements and prior Court settlements protecting the rights of the Liveaboard Slip Lessees. The Kesslers claim that the "lease" for dock space conveys equitable interests to the Kesslers. However, since all of the legal actions initiated by the City were dismissed, and other self-help actions by the City were patently unlawful, it is unnecessary for purposes of the instant action to relitigate the Kesslers' rights under the lease.

Marina Services Director), Karen M. Olsen (Deputy Port and Marine Services Director), with offices at 1300 White Street, Key West, Florida 33040. (collectively referred to herein as "Individual City Defendants"). Parties Ronald Ramsingh, Esq. and George Wallace, Esq. at relevant times herein served as Deputy City Attorneys and as such knew or should have known that their actions as set forth herein were contrary to law and the ethical practice of law and were done with reckless indifference to the rights of the Kesslers. Individual Defendants James K Scholl, Greg Veliz, Jim Young, Doug Bradshaw, Karen Olson, and Mark Tait were all in positions of management for the City of Key West, and through correspondence, testimony at hearings, and legal filings, the Kesslers became aware that they were all participants and conspirators in the violation of the Kesslers' rights, and through their management experience knew or should have known that their actions were illegal and done with reckless indifference to the rights of the Kesslers.

4.     The Defendant, Douglas N. Higgins, Inc. is a Michigan Corporation with principle offices located at 3390 Travis Point Road, Suite A, Ann Arbor, Michigan, 44108, and at all relevant times was a foreign corporation, retained as a contractor by the City to replace the Sailfish Pier at the City Marina at Garrison Bight in Key West, Florida.

5.    Defendant, Paul R. Waters, is/was a regional manager for Defendant Douglass N. Higgins, Inc, with offices located at 5009 5th Ave. #3, Key West, Florida, 33040. (referred to as "Waters")

## GENERAL ALLEGATIONS – LEGAL HISTORY

6.    At most of the relevant times (from 2004 until July 2018) referred to in the Complaint, the Kesslers resided in a floating home which they owned and docked the entire time at the same slip in Key West at a marina operated by the City and known as Key West City Marina at Garrison Bight.[5]

7.    The Marina consisted of four piers (photo of area attached as P.E. #5) designated for permanent liveaboard residents. On or about May 3, 2016, the City awarded a contract to Defendant Higgins to replace the pier the known as Sailfish Pier, on which the Kesslers lived.

8.    The bid specifications included an unconditional obligation for the contractor Higgins to tow, relocate and be responsible for any damage caused by the towing of the 17 liveaboard tenants to temporary locations during the construction period, and return them safely to their original locations at the conclusion of the construction. Although the bid was not awarded until May 2016, Higgins had submitted their bid in January of 2016. The bid requirements

---

[5] A more complete factual background on the Marina and history can be found in the Memorandum of Law in Support of the Motion to Dismiss (P.E. #3) filed by the Kesslers in Monroe County Court.

specifically stated that the contractor was responsible for inspection of the conditions prior to submitting the bid and that the bid should consider any conditions found during the inspection. The bid documents contained no provision to allow Higgins to determine by subsequent inspection the suitability of a home for relocation.

9. Despite the contract being awarded in May of 2016, the Kesslers were never advised of any issue or concern involving the relocation of their home until August of 2016.

10. While out of town attending to Mr. Kessler's seriously ill mother, in early August 2016, he received an urgent call from the Marina that the contractor refused to move his home because of floatation concerns.

11. Much later, in response to a public records request, the Kesslers discovered that the Defendant Higgins had sent a letter dated July 22, 2016 (P.E. #6), identifying a total of five other homes he had concerns about.

12. The late date of the July 22, 2016 letter, just days before the scheduled relocation, demonstrates how both the City, Individual City Defendants, Waters and Higgins operated in bad faith and were negligent in not allowing the Kesslers, and those similarly situated, any reasonable opportunity to respond or make repairs.

13.    In a good faith effort to resolve the issue and allow the contractor to begin the reconstruction of the Sailfish Pier, The Kesslers volunteered to relocate their home themselves. The Kesslers, who were unskilled amateurs, relocated their home without a problem. None of the issues Defendant Higgins raised materialized.[6]

14.    After the successful relocation of their home, the Kesslers were surprised to be served with a Notice of Code Violation.

15.    In the interest of an amicable resolution, the Kesslers immediately inquired as to what remedial steps they could take to satisfy the alleged Code violation. (P.E. #7) The attached e-mail is telling, since Florida Law requires that any Code Violation be the result of a personal inspection and determination by a Code Officer. The e-mail makes it clear that the violation was not issued based on his personal inspection nor did the Code Officer have any idea what remedy was needed to come into compliance.

16.    The City refused to provide a cogent response to the Kesslers' request for instructions on how to remedy the violation and instead engaged in a series of illegal machinations which will be set forth with particularity later in the instant Complaint.

---

[6] When the Sailfish Pier reconstruction was complete, the Kesslers moved their home back to its original location, again without any problems.

17.     Since the governing ordinance (Sec 14-185(b) ) only provided the general requirement that flotation be "securely fastened" but did not specify any measurable or objective standards for compliance, compounded by the fact that the City and Individual City Defendants were  unwilling or unable to provide standards or guidance for compliance, the Kesslers sadly came to the realization that the City and Individual City Defendants were not actually interested in compliance, and any attempt to defend at a hearing would be an exercise in futility.

18.     Florida Statute requires that a code violation be the result of a personal inspection of a designated Code Officer and that an inspection occur only with the permission of the owner or pursuant to a search warrant.  The Code officer told the Kesslers that he had not done a personal inspection, and the Kesslers had given no one permission to inspect, nor had they been served with a search warrant.

19.     Ordinarily, under the circumstances described above, the alleged violator might appeal to the Code Enforcement Administrative Law Judge to dismiss the matter because of the defects. However, since the prosecuting attorney for the City also served as Counsel to the Administrative Law Judge, this would have clearly been a futile effort.[7]

---

[7] The Kesslers' concern in this regard was later born out when the prosecuting attorney advised the Administrative Law Judge to disregard the Federal Court and the automatic stay attendant to the Notice of Removal.

Page 14 – Complaint – Kessler vs. City of Key West, et al.

20.    For the reasons stated above and other Due Process and Equal Protection concerns, the Kesslers believed that the prosecution violated the Kesslers' Constitutional rights, conferring Federal Jurisdiction.

21.    The Kesslers filed a Notice of Removal (P.E. #1) to Federal Court on January 24, 2017 and served the City and Administrative Law Judge the same day. Despite the automatic stay attendant to the filing of the Notice of Removal, and without seeking relief from the automatic stay, the City and the Administrative Law Judge continued their enforcement actions against the Kesslers over the Kesslers' objections.  These events were restated by this Honorable Court in its Order of June 30, 2017, (P.E. #2)

> *".... despite having notice of the Kessler's "removal" the City allowed this matter to remain pending before this Court from January 25, 2017 until the present date, Rather than promptly responding to the Notice of Removal and resolving the above styled matter in in a timely fashion, the City elected to ignore this matter and proceed with administrative Code Enforcement..."*

22.    The aforesaid June 30, 2017 Order (P.E. #2) of this Honorable Court Dismissed with Prejudice the underlying Code Enforcement action and unambiguously ended the Code Enforcement action against the Kesslers.

23.    When the City told the Kesslers they intended to disregard the Order of this Court, ostensibly because they disagreed with the Order's meaning, the Kesslers pleaded with the City to seek clarification, reconsideration, relief, or Appeal from

the June 24, 2017 Order so the parties could proceed with the matter in a lawful manner consistent with this Honorable Court's intent.

24.    The Kesslers also offered the City the opportunity to make a joint request to this Honorable Court, to confirm the intent of its Order (P.E. #8). The City refused, and thereafter, the Kesslers submitted a unilateral request for clarification and/or confirmation of the Order. This request did not result in the Court modifying the Order.

25.    The Kesslers believe it is self-evident and therefore aver that the City Officials' refusal to obtain clarification of the Order is evidence of their bad faith and is proof of their knowledge and understanding that their actions were contrary this Court's Order and therefore illegal. Concurrent statements of City Officials to the Kesslers indicated an arrogant disregard and disdain for the Federal Court in general.

26.    Frightened by what was by now, a complete breakdown for the respect of the rule of law and the Federal Court by City Officials, the Kesslers retained the services of long time Key West local attorney Hugh Morgan, Esq. in the hope that he could intercede to find a reasonable and amicable resolution and perhaps a sane and sober return to the rule of law.

27.    Despite Mr. Morgan's best efforts, he was unsuccessful in finding an amicable resolution. However, the Kesslers did incur attorney's fees which they request as part of this action.

28.    Apparently in retaliation for involving the Federal Court, after receiving the June 30, 2017 (P.E. #2) Order, incredibly the City increased its harassment of the Kesslers by filing an Eviction Action in the Monroe County Court, Florida, based solely on the claim that the Kesslers had been convicted of the code violation which had just been dismissed by the Federal Court.

29.    In response, the Kesslers filed a Motion to Dismiss, (P.E. #3) stating, *inter alia* that the that the Code Violation issue had already been resolved by this Honorable Court.

30.    An inordinate delay followed, as it appeared that two Monroe County judges assigned to the case engaged in what appeared to be an off the record "*sua sponte defacto recusal*" [8] (*our terminology for lack of a better legal definition of what occurred*). The matter was then reassigned to a vacant judicial seat, to await a hearing after the Governor of Florida filled the judicial vacancy.

31.    Finally, on January 19, 2018, a hearing was held in Monroe County Court before the newly appointed Judge.  At the hearing, in open Court, the newly

---

[8] The Kesslers were notified by telephone of the reassignments, being advised off the record by law clerks of the Judges reluctance to hear a case which potentially pitted the politically corrupt influence of the City of Key West Officials against the authority of the Federal Courts.

appointed County Judge Mark Wilson made it clear that he was inclined to grant the material aspects of the Kesslers' Motion to Dismiss.

32.     On January 31, 2018, before Judge Wilson had an opportunity to issue his written Order, the City and Individual City Defendants filed a Voluntary Dismissal of the Eviction Action (P.E. #4).

33.     Having suffered two judicial losses, the City and Individual City Defendants then decided to make an unprecedented attempt to terminate the Kesslers' lease with the City without cause. The lease provided the tenant an opportunity for a hearing before the Port Authority Board prior to a lease termination. However, at the time of the attempted cancellation, the Port Authority Board had been disbanded, so the City notified the Kesslers that the required hearing would be held before the City Manager.

34.     The Port Authority Board had consisted of non-employee citizen volunteers, which provided a level of protection from the improper actions of employee bureaucrats.  Substitution of a single paid bureaucrat for a volunteer citizen board was hardly appropriate or equivalent due process.

35.     Despite the Kesslers' request, the City refused to provide any reason or cause for the City's termination of the Kesslers' lease, making it impossible to defend against.

36.     Although the Kesslers objected to the entire process, they attended the hearing under protest so as not to be accused of defaulting.

37.     At the hearing, due process was turned on its head, as the Kesslers were asked first to explain why their lease should not be terminated, before the City presented any evidence.

38.     The gist of the City's testimony was that the Kesslers were good tenants with an excellent rent payment history over their 14-year tenancy, and that the cancellation was without cause. They could not identify any precedent for the action they were taking against the Kesslers. A transcript of this hearing exists, and many members of the public spoke against the persecution of the Kesslers. It is noteworthy that not even any City official testified of any negative attribute of the Kesslers or their tenancy. To the contrary, many spoke very favorably of the Kesslers' tenancy.

39.     When one City Official tried to testify regarding the alleged Code Violation, Deputy City Attorney George Wallace, Esq. prevented the testimony stating that the matter had been judicially resolved in the Kesslers' favor.

40.     After the hearing, the City Manager assured the Kesslers that their lease would not be terminated as memorialized by confirming e-mails with the City Manager and the City Attorney.

41.     Sometime in September of 2018, without prior notice to the Kesslers, the City and/or Individual City Defendants exercised "self-help" and removed the remaining personal property from the Kesslers' slip without benefit of any legal process or authorization.

42.     In February of 2019, the City and or Individual City Defendants provided notification of their intent to dispose of the personal property of the Kesslers, again without benefit of any judicial process.

### GENERAL ALLGATIONS – KESSLERS' PROPERTY DAMAGE

43.     The entire episode described in this Complaint, which resulted in a malicious violation of the Kesslers' Civil Rights, and the tragic loss of their home and almost all their personal belongings, had at its core absolutely no colorable basis in scientific fact nor was the result of any good faith investigation.

44.     The floating home in which the Kesslers lived was constructed with 4 fiberglass pontoons which were fully integrated with and inseparable from the floating home's structure.  Based on Archimedes principle and the average weight of seawater, these pontoons displaced (or were capable of floating) at least 73, 728 pounds.  The home-maintained freeboard (or height above the sea-level) of at least one foot always.  This provides scientifically irrefutable proof that the home weighed no more than 60,000 pounds and that the integrated floatation was fully capable of supporting the structure. In support of the Kesslers' application for a

Certificate of Occupancy in 2004, the City requested and the Kesslers provided an expert report from a marine architect that the floatation was safe and adequate. Based on that report the City issued a Certificate of Occupancy.

45.     Since the issuance of the Certificate of Occupancy there were no material changes in the integrated floatation nor the weight of the floating home.

46.     The City continued to impose a daily fine of $250, and since the City would likely disregard any legal restraints, the Kesslers' legal counsel recommended the unilateral removal of the reserve and safety floatation that the City found offensive.

47.     For the sake of clarity, the floating home had primary floatation with enough capacity to keep the floating home safely afloat.  The floatation the City found offensive was supplemental safety floatation, which the Kesslers installed to create a margin of safety and more robust resistance to the effects of hurricanes. The City had issued the Kesslers a Certificate of Occupancy in 2004, certifying *inter alia* the adequacy of the floatation.

48.     Based on the aforesaid advice of Counsel, the Kesslers removed their supplemental safety floatation in the hope the City would discontinue its persecution of the Kesslers.

49.     On September 11, 2017, the Florida Keys were struck by Hurricane Irma, which made landfall as a Category 4 storm, perhaps the strongest Hurricane to strike the lower Keys in recorded weather history.

50.     Of the nine liveaboard homes with an open water exposure (including the Kesslers') only the Kesslers' home and another floating structure survived Hurricane Irma still afloat. A similarly exposed steel hulled vessel also survived. Of the approximately 97 liveaboard vessels or floating homes in the Garrison Bight Marina, approximately 25% percent suffered severe or catastrophic damage.

51.     The intact survival of the Kesslers' home in a storm of historic proportions is proof by actual experience that the alleged issues raised by the City were without merit.

52.     One of the piers operated by the City in the same Marina with the same exposure, was completely torn apart in the storm, setting loose and afloat large heavy slabs of concrete kept afloat by attached floatation materials, creating a hazard to navigation and other floating homes due to the City's own failure to maintain its facilities.

53.     On December 3, 2017, the Kessler's home was struck by a large piece of floating debris, which punctured a large hole in one corner of its floatation causing the home to sink, resulting in the total loss of the Kesslers' home and most of their personal property.

54.     Had the City not forced the removal of the safety and reserve floatation under color of law and violation of the rule of law, it is a scientific certainty that the Kesslers home would not have sunk.

55.   The estimated[9] special damages suffered by the Kesslers are as follows:

Value of leasehold interest…………………..…..$100,000.00

Market value of floating home/contents…………….$300,000.00

Pamela Kessler, reduction salary benefits until retire.$120,000.00

PV[10] of Pamela Kessler, loss of retirement benefits...$ 59,275.00

PV Pamela Kessler, loss of employment contract…..$ 40,000.00
ESTIMATED DIRECT ECONOMIC LOSSES      $619,275.00

## COUNT 1
### Kesslers vs City and Individual City Defendants
### (Contempt of Orders and Rules of Federal Court)

56.   The Kesslers' incorporate by reference paragraphs 1 through 54 as though

fully set forth herein.

57.   The Defendants have acted in blatant disregard of this Court's Rules and

Orders, in derogation of the authority of this Honorable Court, and the Rule of

Law. Furthermore, the Defendants' actions as aforesaid have caused great harm to

the Kesslers.

58.   The Defendants have already demonstrated their contempt of the Court's

Orders, and the Kesslers respectfully suggest that only that only substantial

sanctions will have the appropriate deterrent effect.

---

[9] The estimates cited in this paragraph are based on market value comparables, and publicly published annuity tables. The Kesslers will obtain the services of an expert economist prior to trial and reserve the right to amend these estimates upon receipt of the economist's report.
[10] Estimated present value using a 3% discount rate

59.    Key West has the dubious distinction of having it or its departments declared "criminal enterprises" by the United States Department of Justice in the past. Collectively, the City of Key West, and the Individual City Defendants have clearly demonstrated that they continue to be a "criminal enterprise" which should be restrained, and from which the Kesslers deserve the Court's protection.

WHEREFORE, the Kesslers respectfully request that this Honorable Court enjoin any additional legal action against the Kesslers without first obtaining leave of this Court, that the Court impose sanctions in an amount which will deter continued defiance of this Court and the Rule of Law and issue a Protective Order for the benefit of the Kesslers.

## COUNT 2

Kesslers v. Higgins & Waters
(Disparagement, Professional Negligence, Tortuous Interference with Business
Relationship, Violation of Civil Rights)

60.    The Kesslers incorporate by references paragraphs 1 through 59 as though fully set forth herein.

61.    Through a later public records request, the Kesslers became aware of a letter to the City from Higgins and signed by Waters dated July 22, 2016 attached as P.E. #6.

62.    The aforesaid letter was false in its references to the Kesslers home, made in reckless disregard of the truth, scientifically without merit, contrary to fundamental

rules of science and engineering, and was a self-serving fraud in that it helped Higgins avoid contractual obligations and costs.

63.     Higgins and Waters held themselves out as "experts" in marine engineering, yet failed to follow the basic scientific principles in their area of expertise, failed to do a reasonable inspection so as to have a reasonable factual basis for their opinions, failed to perform any calculations or tests, failed to review building plans on file with the City of Key West or the expert opinion on file from a certified marine architect which supported the adequacy of the Kesslers' floatation.

64.     The aforesaid conduct was negligent, professionally negligent, and the report constituted "junk science" which was patently false and incorrect in its conclusions regarding the Kessler's home.

65.     Higgins and Waters failed to advise the Kesslers of their findings and concerns to allow them to provide additional information and insight.

66.     Higgins and Waters knew or should have known that their letter could interfere with the Kesslers' contractual relationship with the City and was done with reckless disregard of the Kesslers' rights, and it was reasonably foreseeable that their conduct could result in a tortuous interference with the Kesslers' business relationship with the City.

67.     The aforesaid disparagement caused the Kesslers great harm, inconvenience, and pecuniary loss.

68.    Higgins as a governmental contractor, was contractually and legally subject to the same restrictions against the violation of the Kesslers' civil rights as the governmental entity itself.

69.    The aforesaid letter was used as a basis to begin the harassment of the Kesslers, violation of their civil rights as outlined herein, and substantial harm as aforesaid.

WHEREFORE, the Kesslers demand damages in excess of $619,275.00, plus all categories of general damages including sanctions that the Court may impose, attorney fees, and costs of suit.

## COUNT 3

Kesslers v. Higgins and Waters
Breach of Third-Party Beneficiary Contract

70.    The Kesslers incorporate by references paragraphs 1 through 69 as though fully set forth herein.

71.    On or about May 3, 2017, Higgins entered into a contract with the City for the replacement of Sailfish Pier. (This contract is a very lengthy document and therefore not attached, however it is available online on the City of Key West's website under the documents related to the May 3, 2017 public meeting.)

72.    Pursuant to the terms of this contract, Higgins was obligated to tow the Kesslers' home to a temporary slip and return it to its original location at the

conclusion of the construction. The Kesslers were also to be the beneficiary of the improved slip, which included ungraded electrical and utility connections, etc.

73.   The Kesslers were third party beneficiaries under this contract.

74.   Higgins breeched their contractual obligations to the Kesslers which resulted in substantial direct and consequential damages which are set forth with specificity herein.

WHEREFORE, the Kesslers demand special damages in excess of $619,275.00 plus all categories of general damages, costs of suit, and attorney's fees.

## COUNT 4

Kesslers v. City & Individual City Defendants
42 U.S.C. 1983, 1985 (Due Process, Violation of Federal Rules of Court)
Florida Statute 768.295 (Wrongfully Perpetuate Harassing Litigation In Violation
Of Strategic Lawsuits Against Public Participation) (Slapp)

75.   The Kesslers incorporate by references paragraphs 1 through 74 as though fully set forth herein.

76.   The Notice of Removal (P.E. #1) when filed, divested the Special Magistrate of jurisdiction in the case, and all actions by the Special Magistrate subsequent to the removal and prior to dismissal or remand are *void ab initio*. (See 28 U.S.C.A. § 1446(d).

77.    Any action to continue the enforcement of the alleged Code violation was contrary to 28 U.S.C.A. § 1446(d).

78.    The City and Individual City Defendants continued their enforcement of the alleged Code violation in the face of the stay which they knew or should have known was contrary to the Rules of this Honorable Court.

79.    There was no colorable basis for their continued enforcement which was in bad faith and in reckless disregard of the rights of the Kesslers.[11]

80.    The Individual City Defendants knew or should have known that any challenge or relief from the Orders or Rules of the Federal Court should have been brought before this Honorable Court.

81.    The Individual City Defendants conspired to attempt the illegal continued enforcement of the alleged Code Violation in violation of the Kesslers' Due Process Rights.

82.    The Individual City Defendants engaged in retaliatory, vexatious, and harassing litigation which is actionable under F.S. 768.295.

WHEREFORE, the Kesslers demand special damages in excess of $619,275.00 plus all categories of general damages, costs of suit, and attorney's fees.

---

[11]"…Entry upon private premises, without consent, on the assertion of a warrant, knowing that there is none, would seem to us a prime example of reckless indifference to the rights of the individual citizen however devoted the officer may, mistakenly, feel to what he considers his duty. So also, of course, is the uttering of defamatory statements which are known to be false. Any higher requirement for destruction of the conditional privilege would permit any officer, who was sufficiently ingenuous or zealous, to ride roughshod as "duty" called.." Hunt v. Evans, D.C.Cir. 1926, 56 App.D.C. 97, 10 F.2d 892.

100.  In September of 2018, the Kesslers learned that the City and Individual City Defendants simply removed their remaining personal belongings from the slip without the benefit of any legal action or legal authority.

101.  In February of 2019, the Kesslers received notice that the City and Individual City Defendants were going to auction off the personal items they wrongfully removed.

102.  The above was all done with the intention to violate the Kesslers' Due Process rights, abuse the legal system, and to harass the Kesslers with retaliatory, vexatious and harassing litigation.

WHEREFORE, the Kesslers respectfully request that this Honorable Court enjoin the auction of the Kesslers' personal belongings, special damages in excess of $619,275.00 plus all categories of general damages, costs of suit, and attorney's fees.

## Count 7
### Kesslers v. City & Individual City Defendants

<u>42 U.S.C. 1983, 1985, Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act</u> . (Violation of Plaintiff's Civil Rights and Conspiracy to Violate Civil Rights, under the 14th Amendment (equal protection) of the United States Constitution)

103.  The Kesslers incorporate by references paragraphs 1 through 102 as though fully set forth herein.

104.   The City has operated the City Marina at Garrison Bight for over 50 years, and by their own testimony under oath, there has never been an attempted lease termination without cause.  By their own admission, there is no precedent for the enforcement of Code Enforcement ordinance in violation of statute, or the continued enforcement in the face of adverse Court rulings.

105.   The treatment of the Kesslers is unique and unprecedented among the liveaboard community in the Marinas operated by the City. However, this is not surprising given that the disregard of individual rights is a longstanding Key West tradition.[14]

106.   As a government agency that accepts Federal Funds, The City and Individual Defendants are required to provide the Kesslers with equal protection, and compliance with the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act.

107.   The Kesslers, either individually or together, are in a "protected" class under one or more of the aforesaid statutes.

108.   Direct and circumstantial evidence of discrimination can be found in the statements of Individual Defendant Assistant City Manager (and convicted felon[15])

---

[14] A recent example is the attempted deportation of a United States Citizen Peter Brown, which the local newspaper said was because he was from Philadelphia. "I would never have expected in a million years that this would happen," said Brown, in a video released by the ACLU along with a statement Monday. (*December 2018*). "With policies like this and people implementing them like that, it's only going to continue. There has to be a stop to it at some point before it becomes all of us."

[15] Federal Grand Jury indictment, dated April 10, 1991, that says that, for at least three years, between January 1988 and April 1991, Gregory Veliz (Assistant City Manager) and Charles Ferrell Barwick "did

Greg Veliz at a Monroe County Court sponsored mediation in which he publicly stated that he wanted the Kesslers "out" regardless of legal right or good cause. A convicted felon was the only representative the City sent with decision making authority.

109.   Ordinarily, upon the showing of a prima facie case of discrimination, the Defendant has the burden to come forth with a non-discriminatory pretext for their actions. This case is unusual in that the pretext of a "Code" violation has already been judicially dismissed, and officials have already testified under oath that the treatment of the Kesslers is without cause.

110.   The aforesaid conduct is a self-proving case of selective enforcement and/or discrimination for which the City and Individual Defendants are liable.

WHEREFORE, the Kesslers demand special damages in excess of $619,275.00 plus all categories of general damages, costs of suit, and attorney's fees.

## Count 8

### Kesslers v. City of Key West, Individual Defendants
### Negligence, Strict Liability in Tort, Increased Risk of Harm.

---

knowingly, intentionally and unlawfully combine, conspire, confederate and have a tacit agreement with one another and with other persons to distribute and possess with the intent to distribute cocaine . . ."  Veliz pled guilty to the charges and was sentenced to 75 months in prison, plus five years' probation, plus a $50,000 fine. City Manager Scholl's public explanation for hiring a convicted felon with no reasonable qualifications to the $125,000.00 + plus position was that there were somehow no other applicants.

111.  The Kesslers incorporate by references paragraphs 1 through 110 as though fully set forth herein.

112.  City of Key West and Individual City Defendants, under color of law, did wrongfully and illegally force the Kesslers to remove safety and reserve floatation from their home substantially increasing the risk of harm to the Kesslers.

113.  The sinking of the Kesslers' home did not occur from Hurricane Irma in September of 2017(which would be an act of God) but occurred in December 2017 about two months later.

114.  If the reserve and safety floatation had remained in place, the Kesslers' home would not have sunk in December.

115.  The Kesslers home sank after being struck by a large piece of floating debris still in the water after the Hurricane.

116.  The City should have, in the exercise of reasonable care, provided low cost netting, to prevent the type of incident which sunk the Kesslers' home.

117.  The debris which struck the Kesslers' home appeared to be from the remains of the Kingfish Pier, which broke apart during Hurricane Irma.

118.  The City was negligent in maintaining Kingfish Pier and not corralling or removing the debris after the hurricane.

119.     Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the

harm is brought about through the interaction of another force does not relieve the actor of liability. *See* <u>Concord Florida, Inc. v. Lewin, 341 So.2d 242 (Fla. App., 1976).</u>

WHEREFORE, the Kesslers demand special damages in excess of $619,275.00 plus all categories of general damages, costs of suit, and attorney's fees.

<u>s/Pamela Kessler, s/Stuart Kessler</u>

4606 Carlton Golf Drive
Wellington, Fl 33499
Landline 561-444-3933
Cell 305-393-5066
e-mail: skessler@kesslerlegal.com

<u>Dated February 21, 2019</u>

## VERIFICATION

The Plaintiffs Stuart Kessler and Pamela Kessler hereby verify the facts contained in the foregoing Complaint are true and correct to the best of their knowledge information and belief.

February 22, 2019

Stuart Kessler

Pamela Kessler

PLAINTIFF'S EXHIBIT #1

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF FLORIDA

City of Key West
    Plaintiff,

v.

Stuart and Pamela Kessler H/W

Case No.

formerly case # 16-1247
Code Enforcement

FILED by _(signature)_ D.C.

JAN 25 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – KEY WEST

JURY TRIAL DEMANDED

## NOTICE OF REMOVAL

**COMES NOW** the Defendants, STUART & PAMELA KESSLER, H/W who

hereby removes Case Number 16-1247 from the City of Key West Code

Compliance to the United States District Court for the Southern District of

Florida pursuant to 28 U.S.C. 1331 and as grounds for removal state the

following:

## STATEMENT OF THE CASE

1. On December 14, 2016, Plaintiff filed a Notice of Administrative Hearing. A copy

of the Notice is attached hereto as Exhibit A.

2. The Kesslers were served with a notice on or after December 26, 2016. The

exhibits to the Notice were not provided until January 24, 2017.

3. The Notice purports to assert a violation of Key West City Code of Ordinances Sec.14-185 Compartmentation and flotation devices.

4. The Plaintiff conducted their inspections in violation of the Defendants' Fourth Amendment Rights under the United States Constitution and Florida Statute 933.21 relating to obtaining search warrants prior to inspection.

5. The City of Key West has threatened to remove utilities from the Defendants' home without exercising Due Process in violation of City of Key West Ordinances and the Defendants' Fourth Amendment Rights under the United States Constitution. (See copy of letter of City Attorney Ronald Ramsingh dated September 28th 2016, relevant sections marked.)

6. In violation of its own Codes related to inspection, the City conspired with a third party contractor with a pecuniary interest to file a specious Code Enforcement Action against the Defendants. These actions are in violation of multiple Federal Statutes including, but not limited to, the Hobbs Act and RICO Act.

## FEDERAL QUESTION JURISDICTION

7. The Court has jurisdiction over this matter under 28 U.S.C. 1331 because there are substantial Federal questions. In addition, the Defendants respectfully request the Court to exercise its ancillary jurisdiction over the State matters.

## PROCEDURAL REQUIREMENTS

8. Pursuant to 28 U.S.C. 1446 (a)  a true and correct copy of all of the process,

pleadings, orders, and documents from the City Action which have been served upon

the Kesslers are being filed with this Notice of Removal. Defendants will file true

and legible copies of all other documents on file in the City Action, as well as a

certification  within 30 days of the filing of this Notice of Removal.

9. Venue is proper in this Court pursuant to 28 U.S.C. 1441 (a) and 1446 (a) because

the United States District Court for the Southern District of the State of Florida is the

federal judicial district embracing the City of Key West where the Notice of

Administrative Hearing was originally filed.

## CONCLUSION

By this Notice of Removal, Defendant does not waive any objections it may have

as to service, jurisdiction or venue, or any other defenses or objections it may have

to this action. Defendants intend no admission of fact, law, or liability by this

Notice, and expressly reserve all defenses, motions, and/or pleas.

1/25/17
DATE

Stuart and Pamela Kessler H/W, *pro se*

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

City of Key West

**DEFENDANTS**

Stuart and Pamela Kessler, h/w

**(b)** County of Residence of First Listed Plaintiff   Monroe
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Monroe
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
        THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ronald Ramsingh, P.O. Box 1409, Key West, Fl 33041,
Tele: 305-809-3770

Attorneys *(If Known)*   Pro Se
P.O. Box 2730
Key West, FL 33045
skessler@kesslerlegal.com

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | Liability / ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 340 Marine / Injury Product | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal / Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | Injury / ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - / Product Liability | Leave Act | | ☐ 895 Freedom of Information |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☒ 443 Housing/ / Sentence | | | |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 550 Civil Rights | ☐ 465 Other Immigration | | |
| | Other / ☐ 555 Prison Condition | Actions | | |
| | ☐ 448 Education / ☐ 560 Civil Detainee - | | | |
| | / Conditions of | | | |
| | / Confinement | | | |

FILED by _____ D.C.

JAN 2 5 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. - KEY WEST

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
       Proceeding

☒ 2 Removed from
       State Court

☐ 3 Remanded from
       Appellate Court

☐ 4 Reinstated or
       Reopened

☐ 5 Transferred from
       Another District
       *(specify)*

☐ 6 Multidistrict
       Litigation -
       Transfer

☐ 8 Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
United States Constitution, Fourth Amendment(unlawful search), Fifth and Fourteenth (due process)

Brief description of cause:
Building Code enforcement procedure violations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*   JUDGE _____   DOCKET NUMBER _____

DATE  1-5-17

SIGNATURE OF ATTORNEY OF RECORD   Pamela Kessler, PRO SE

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT  $400.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# IN THE CODE COMPLIANCE DIVISION OF THE CITY OF KEY WEST

City of Key West
    Plaintiff,
                                   CASE NO.

v.

Stuart and Pamela Kessler H/W,
    Defendants
                                Case No.formerly case # 16-1247
                                Code Enforcement

## DEFENDANTS' NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, on January 25, 2017, Defendants

Stuart and Pamela Kessler H/ filed a Notice of Removal, pursuant to 28

U.S.C. 1331, removing the above-captioned action from the City of Key West

to the United States District Court for the Southern District of the State of

Florida. A true and correct copy of the Notice of Removal is attached hereto

as **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that, upon the filing of the Notice

of Removal with the Clerk of the United States District Court for the Southern

District of the State of Florida, and filing copies thereof with the Clerk of Key

West, the Defendants have effected removal and the Administrative Court

shall proceed no further in this action unless and until the case is remanded

pursuant to 28 U.S.C. 1446(d).

Dated: January 25, 2017

Stuart and Pamela Kessler H/W, *pro se*



# THE CITY OF KEY WEST
## Code Compliance Division
P.O. BOX 1409
KEY WEST, FL 33041
**(305) 809-3740**

## NOTICE OF ADMINISTRATIVE HEARING

DATE: December 14, 2016
RE: CASE NUMBER 16-1247

CERTIFIED MAIL RECEIPT#:     7003 0500 0002 2662 2841

To:
Stuart Kessler
Po Box 2730
Key West, FL 33045

Subject Address: Floating Structure/Home @
1801 N Roosevelt Blvd D8
Key West, FL 33040

**TAKE NOTICE** that the City of Key West Code Compliance Division has requested the City of Key West Special Magistrate to conduct an administrative hearing regarding code violation(s) reported to you by **NOTICE OF CODE VIOLATION** concerning the above noted subject address.
You were noticed that your property is in violation of the City of Key West Code of Ordinances for the following reason(s):

### Count-1: Sec.14-185 Compartmentation and flotation devices.

**(a)*Compartmentation of devices.*** Watertight pontoons, floats, hulls or other devices used to keep the floating home afloat shall be fitted with transverse or longitudinal watertight bulkheads which provide compartmentation sufficient to keep the fully loaded floating home afloat with positive stability with any one compartment flooded. This subsection may be waived by the chief building official upon certification by a competent architect or engineer familiar with such devices that design, materials and construction of the hull or other floatation device is such that the possibility of rupture is extremely remote.

**(b)*Construction generally.*** Flotation devices shall be structurally sound and securely fastened to the floating home superstructure. Flotation devices shall be constructed so that access to each compartment is readily available from the first floor level of the completed floating home. The external surfaces of all flotation devices shall be watertight and thoroughly protected from corrosion from saltwater, solvents and weather.

**(c)*Bilge pump.*** Where permanent-type flotation such as Styrofoam or plastic foam is not provided, an adequate portable bilge pump shall be maintained in proper working order.

**(d)*Holding tank.*** Flotation and decking shall provide access to the sewage pump.

**(e)*Material.*** All material, such as decking, siding and subflooring, which is subjected to moisture or water splash shall be of a type not adversely affected by moisture or shall be treated.

To wit: Responding to this complaint I conducted a site visit on August 31, 2016. I observed and photographed the vessel located at the slip #8 of Dolphin pier. The owner of this vessel was notified by the duck master that this vessel needs to be repair and secure the floating devices. As December 14, 2016 there has been no progress towards compliance.

**Corrective action: Please repair and secure the floating devices of this floating structure/home.**

In accordance with Florida Statutes § 162 and Code of Ordinances, City of Key West, § 2-631 through § 2-647, The City of Key West has scheduled a hearing to be held at **Old City Hall, 510 Greene Street, Key West, Florida at 1:30 P.M. on:**

## January 25, 2017

The Chambers will be open at 1:00 PM.  These proceedings may be televised.

The purpose of this hearing is to determine if a violation(s) exists, the appropriate action to be taken, if any is required, and if any fines or penalties are to be imposed.  **YOU ARE REQUESTED TO APPEAR AT THIS HEARING** to present evidence and/or testimony to show cause, if any, why you should not comply with City Ordinances.  **YOUR FAILURE TO APPEAR MAY RESULT IN A FINE OR PENALTY BEING IMPOSED AGAINST YOU AND A LIEN BEING IMPOSED UPON YOUR PROPERTY.**

You have a right to have an attorney present at the hearing.  If an attorney represents you, your attorney must file written notice with this office prior to the hearing date.

If you intend to request a continuance from the Hearing Date set out above you must submit a written request for a continuance addressed to the Special Magistrate and mailed to PO Box 1409, Key West, FL 33041 or delivered to the Special Magistrate's Legal Analyst at 3139 Riviera Drive, Key West, FL 33040. All requests must be received at least five (5) working days prior to the Hearing Date set out above.  If the request is not received five (5) working days prior to the Hearing Date you or your attorney must appear on the Hearing Date to petition the Special Magistrate for a continuance.  If any continuance is granted this will not stay discovery and all records previously requested must be supplied to the City or formally objected to.

**Be advised that, if you decide to appeal any decision of the Special Magistrate in this code enforcement hearing, you shall be responsible to ensure that a verbatim record of the proceedings of this code enforcement hearing is made, such that any evidence and testimony upon which an appeal may be based can be submitted to the appellate court.**

If you are found to be in violation of City of Key West Ordinances, administrative costs in the amount of **$250.00** may be levied for administrative recovery for prosecution and investigation in addition to levied fines associated with the violation(s).  **Failure to pay these costs will result in a lien against the property in violation.**

**PER FLORIDA STATUTES SECTION 162.09, YOUR FAILURE TO CORRECT THE VIOLATION (S) MAY RESULT IN THE IMPOSITION OF A FINE OF UP TO $250.00/DAY, AND $500.00/DAY FOR A REPEAT VIOLATION.  IF THE VIOLATION (S) IS IRREPARABLE**

**OR IRREVERSIBLE, A FINE OF UP TO $5000.00 MAY BE IMPOSED BY THE SPECIAL MAGISTRATE. FINES MAY BE IMPOSED ON A PER DAY/ PER VIOLATION BASIS.**

*Jorge Lopez*
Jorge Lopez
Code Compliance Officer
City of Key West
*(305)809-3735 Desk*
*(305)797-6564 Cell*
*jlopez@cityofkeywest-fl.gov*
*Working Schedule Wednesday-Sunday*

*Exhibit B*

OFFICE OF THE CITY ATTORNEY



PHONE: (305) 809-3770
FAX: (305) 809-3771

## THE CITY OF KEY WEST

POST OFFICE BOX 1409
KEY WEST, FL 33041-1409
WWW.KEYWESTCITY.COM

September 28, 2016

Stuart Kessler
P.O. Box 2730
Key West, FL 33045
skessler@kesslerlegal.com
305-295-7670 (home)
305-393-5066 (cell)

<u>SENT VIA ELECTRONIC & CERTIFIED MAIL</u>

*RE: Floating structure/home at Garrison Bight Code case #16-1247*

Dear Mr. Kessler.

I am in receipt of your correspondence regarding the above referenced code violation. I have also met with Code Officer Lopez, Chief Building Official Wampler (CBO), and Code Director Young.

Please be advised that many of your inquiries in your correspondence dated 9/28/16 at 5:21 p.m. do not involve producing documents under Florida's Public Records Law, but rather seek answers to *legal* questions. To the extent that your correspondence makes a public records request, we will certainly comply in producing any qualifying documents that we have. However, neither code compliance, nor city marina staff can answer your particular *legal* types of

questions that perhaps a FL licensed attorney that you hire can answer for you. But in the spirit of cooperation, I will try to assist in helping you understand the city's current position with regards to your floating structure/home.

To recap, the city is currently replacing the pier on which your structure was moored at Garrison Bight Marina. Part of the construction contract was for the construction company to relocate the relevant vessels and structures to accomplish that objective. When it came to your structure, the contractor discovered what they believed to be significant structural concerns with the safety of your structure regarding floatation. This concern came to light upon inspection under water with video cameras. The concern was brought to the attention of city officials. Code Officer Lopez, Code Director Young, and Chief Building Official Wampler reviewed the detailed underwater video and made the determination that your structure violates Sec. 14-185 of the Code of Ordinances. Further, the aforementioned city officials determined that the concerns present a serious life safety issue. Specifically, that you have numerous barrels loosely secured to the underside of your structure that undermines the safe floatation of the structure. Additionally, you have floor joists that are completely exposed to the salt water below without any barrier or shoring for said joists, which support the floor of the home. Because the current condition of your structure presents serious life/safety concerns on behalf of city staff, a Notice of Code Violation was sent to you, giving you 10 days to take corrective action to remedy the concerns. Please note that F.S. 162.06 (4) mandates that: "If the code inspector has reason to believe a violation or the condition causing the violation presents a serious threat to the public health, safety, and welfare or if the violation is irreparable or irreversible in nature, the code inspector *shall* make a reasonable effort to notify the violator *and* may immediately notify the enforcement board and request a hearing." Therefore, it is

not a requirement for city staff to informally request that you rectify this dangerous condition if the code officer believes that the condition presents a serious threat to safety. We have an obligation to the public as well as any occupants of that structure to bring this dangerous condition to the Special Magistrate if voluntary compliance is not achieved. The only vehicle to do that is a Notice of Code Violation. Therefore, the city will not dismiss the Notice of Code Violation until compliance is achieved. I met with the aforementioned city officials this morning regarding this case. In recognition of the extent of work that needs to done to make this structure safe, the city is giving you sixty (60) days from the date of this letter for you to come into compliance. If compliance is not satisfactorily achieved, then the matter will be noticed for a hearing before the Special Magistrate in accordance with F.S. 162.06(4).

Please direct your questions regarding compliance with Sec. 14-185 to Director Young, or CBO Wampler. Since this structure was previously adjudicated by the Code Compliance Special Magistrate as being a floating structure/home, it is settled that the FL Building Code is applicable to it. Therefore, building permits need to be secured for <u>any</u> work that is done to the structure. You have already acknowledged that you have a Certificate of Occupancy (C.O.) for the structure. You need to also be advised that if compliance is not voluntarily achieved to the satisfaction of Director Young, and CBO Wampler, CBO Wampler has the authority under FL Law, the City of Key West Code of Ordinances, and the FL Building code to declare your structure unsafe for occupancy. That can result in removing electrical service and securing any entry into the structure.

That being said, we are asking you to stay true to your correspondence where you pledge to come into compliance in order to avoid these other remedies that are

available to the city in order to ensure the safety of not only the public but also the occupants of the structure.

Thank you for your anticipated cooperation regarding this matter.

Sincerely,

Ron Ramsingh
Chief Assistant City Attorney

c/c:   Code Jorge Officer Lopez
       Code Director Jim Young
       Chief Building Official Ron Wampler

PLAINTIFF'S EXHIBIT #2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 17-10013-CIV-KING

CITY OF KEY WEST,

      Plaintiff,

vs.

STUART KESSLER and PAMELA KESSLER,

      Defendants.

_____/

## FINAL ORDER OF DISMISSAL

**THIS MATTER** comes before the Court *sua sponte.*

### I.    Background

Stuart and Pamela Kessler (hereinafter "the Kesslers") own a floating structure docked at the Garrison Bight Marina in Key West, Florida. After determining that the Kesslers' structure was unsafe, City officials served the Kesslers with a Notice of Code Violation on September 22, 2016 pursuant to Sec. 14-185 of the Code of Ordinances for the City of Key West. D.E. 9. The Kesslers were given ten days to come into compliance. *Id.* After the Kesslers failed to successfully remedy the violation, the City sent the case to a special magistrate for an administrative hearing. *Id.* The City filed a Notice of Administrative Hearing on December 14, 2016, which it served upon the Kesslers shortly thereafter. The Kesslers subsequently filed a Notice of Removal (D.E. 1) on January 25, 2017. Despite having notice of the Kesslers' "removal," the City allowed this matter to

remain pending before this Court from January 25, 2017 until the present date. Rather than promptly responding to the Notice of Removal and resolving the above-styled matter in a timely fashion, the City elected to ignore this matter and proceed with administrative code enforcement. Indeed, it was not until June 9, 2017 that the City finally appeared in this matter and filed a pleading which called into question the propriety of the Kesslers' removal of this action and the existence of this Court's subject matter jurisdiction.

## II.     Legal Standard

It is axiomatic that federal courts are courts of limited jurisdiction; as constrained by Article III of the U.S. Constitution, federal courts may only hear those claims for which Congress has granted jurisdiction. *See Carnival Corp. v. Operadora de C.V.*, 883 F. Supp 2d 1316, 1319 (S.D. Fla. 2012). Removal from state court is proper only if the complaint raises a federal question or the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1441. Removal is only available to the defendant, who bears the burden of demonstrating the existence of federal jurisdiction. *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001). "The existence of federal jurisdiction is tested at the time of removal," *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-95 (11th Cir. 2008), and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

## III.     Discussion

Simply put, the Court lacks subject matter jurisdiction over the instant case. Diversity of citizenship does not exist between the parties, and the complaint does not

raise a federal question. The Kesslers are residents of Florida, and the City of Key West

is also located in Florida, thereby defeating diversity. In addition, the underlying

administrative proceeding does not implicate a federal question because it merely

concerns the enforcement of a local municipal ordinance.

The Kesslers assert several federal defenses, including violations of procedural

and substantive due process rights. However, "the existence of a federal defense normally

does not create statutory 'arising under' jurisdiction . . . ." *Aetna Health Inc. v. Davila*,

542 U.S. 200, 207 (2004) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149,

154 (1908)). Accordingly, the Court lacks subject matter jurisdiction over the instant

case.

### IV.    Conclusion

Therefore, it is **ORDERED, ADJUDGED,** and **DECREED** that this case is

hereby **DISMISSED WITH PREJUDICE** and the Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal

Justice Building and United States Courthouse, Miami, Florida, this 30th day of June,

2017.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:    **All Counsel of Record**
       **Stuart Kessler,** *pro se*
       **Pamela Kessler,** *pro se*

PLAINTIFF'S EXHIBIT #3

**IN THE COUNTY COURT OF THE 16TH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA IN AND FOR MONROE COUNTY**

City of Key West, Florida
*A municipal corporation*
     Plaintiff,

v.

Stuart and Pamela Kessler H/W              Case No. 2017-CC-185-K
     Defendants

                                    JURY TRIAL DEMANDED

## <u>DEFENDANT'S MOTION TO DISMISS</u>
## <u>and Memorandum in Support</u>
in accordance with Fla. R. Civ. P. 1.140(B) for (1) lack of jurisdiction over the subject matter, (3) improper venue, (4) insufficiency of process, and (6) failure to state a cause of action

COMES NOW the Defendants, **STUART & PAMELA KESSLER, H/W** who asks that Plaintiff, City of Key West's Complaint be **DISMISSED WITH PREJUDICE** in accordance with <u>Fla. R. Civ. P. 1.140(B)</u> for (1) lack of jurisdiction over the subject matter, (3) improper venue, (4) insufficiency of process, and (6) failure to state a cause of action, and in support thereof state the following:

## FIRST MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION – (Special Magistrate's actions *void ab initio*)

1. The City of Key West's (hereinafter "City") Complaint and cause of action for breach of the lease rests entirely and completely on the City's reliance on the results of a Key West Special Magistrate code enforcement hearing.

2. If the Court takes judicial notice of matters before the Special Magistrate, included in that review is that the Defendants, Stuart and Pamela Kessler (hereinafter "Kesslers") filed a Notice of Removal to Federal Court on January 25, 2017 (attached as Exhibit "A"), and the matter was DISMISSED WITH PREJUDICE by the same Court on June 30, 2017.

3. The Notice of Removal when filed, divested the Special Magistrate of jurisdiction in the case, and all actions (which include all the Orders attached to City's Complaint) by the Special Magistrate subsequent to the removal and prior to dismissal or remand are *void ab initio*. (*See* 28 U.S.C.A. § 1446(d)).

4. Since the Complaint is wholly reliant on the Orders of the Special Magistrate, and those Orders are *void ab initio* and without legal effect, the Complaint must be dismissed for failure to state a claim.

**WHEREFORE**, The Kesslers respectfully request that the City's Complaint be **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CAUSE OF ACTION.**

**SECOND MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION (Case Dismissed by Federal Court)**

5. The Kesslers incorporate by reference paragraphs 1 through 4 as though fully set forth herein.

6. While the matter was pending before the Federal Court, the City did not file any timely objections to the Notice of Removal, and therefore waived any defenses to the Notice of Removal except Subject Matter Jurisdiction. (See 28 U.S.C. § 1447(c))

7. While the matter was before the Federal Court, the City was in violation of the Automatic Stay in that they proceeded with enforcement through the Special Magistrate in the face of the Stay. According, the Kesslers filed a Motion for Contempt with the Federal Court.

8. While the matter was before the Federal Court the Kesslers also filed a Motion to Dismiss. The City failed to file any response and essentially defaulted.

9. Because of the aforesaid misconduct, the Federal Court had ample reason to sanction the City and exercised its discretion and ancillary jurisdiction to enforce its own Court's rules while the matter was pending before it.

10. On June 30, 2017, the Federal Court dismissed the case with prejudice, (Exhibit "B") which acted as a final adjudication of the matter in the Kesslers' favor, and forever barred further prosecution of this matter.

11. The Federal Court has never remanded this matter back to the State Court; therefore, this Court lacks subject matter jurisdiction of the case.

12. Since the issue has been subject to final adjudication, the instant action must be dismissed under the doctrine of *res judicata*. Alternatively, this action must be dismissed under the principle of *collateral estoppel* and/or the "law of the case" doctrine.

**WHEREFORE**, The Kesslers respectfully request that the City's Complaint be **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CAUSE OF ACTION.**

### THIRD MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION, INSUFFICIENCY OF PROCESS, AND LACK OF SUBJECT MATTER JURISDICTION (Action violates Florida Constitution)

13. The Kesslers incorporate by reference paragraphs 1 through 12 as though fully set forth herein.

14. This matter is nothing more than the unlawful attempt to circumvent the loss of the Code Enforcement action by another means, which is in violation of the Florida Constitution. See, *City of Tampa for Use and Benefit of City of Tampa Code Enforcement Bd. V. Braxton, 616 So.2d 554 (Fla. App 2 Dist., 1993)* ("… The gist of the City's appeal is that it is entitled to a different remedy than is provided by statute. We conclude that once the City opted for

a code enforcement board under chapter 162, it was prohibited by article 1,
section 18 of the state constitution to enforce its ordinance by any other
manner except that described in chapter 162…").

15. Accordingly, this matter must be dismissed as a violation of the Florida
Constitution.

**WHEREFORE,** The Kesslers respectfully request that the City's Complaint be
**DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CAUSE OF
ACTION, INSUFICIENCY OF PROCESS AND LACK OF SUBJECT
MATTER JURISDICTION.**

## FOURTH MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

16. The lease states by its own terms that it is perpetually renewable, and the
City is rent controlled to CPI.  The Kesslers paid a separate consideration of
$5,000 to the City to transfer these perpetual renewability rights to them.
Such leases have been held to convey equitable ownership rights to the
Lessee.

17. Lessees have sold their leasehold interests for amounts substantially in
excess of the jurisdictional limits of this Honorable Court, with the City
collecting only the $5,000 transfer fees.

18. Obviously, if the lease had an expiration, the City could simply await the purported expiration of a lease, and gain the entirety of the value of the leasehold interest for the City.

19. Accordingly, the City has acknowledged that the value of the leasehold based on perpetual renewability is a property right of the Lessee, less a reservation to collect rent.

20. Under Florida Law, leases with the aforesaid characteristics convey equitable title, even while subject to or reserving the right to collect rent.

21. This matter can only be resolved by a Court sitting in Equity, and involves monetary values in excess of the jurisdictional limits of the County Court.

22. The County Court lacks subject matter jurisdiction over claims in Equity. In addition, these equitable rights have a monetary value in excess of the jurisdictional limits of the County Court.

**WHEREFORE,** The Kesslers respectfully request that the City's Complaint be **DISMISSED** as this Honorable Court **LACKS SUBJECT MATTER JURISDICTION.**

## FIFTH MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION

23. To state a cause of action under Chapter 83 of Florida Statutes, the Plaintiff must plead that it did not waive the breach of the lease by accepting rent after giving Lessee notice of the alleged breach. The City did accept the July,

2017 rent after serving the notice of material breach, therefore waiving the alleged breach of the lease, yet filed the instant Complaint in July anyway, with full knowledge that it did not have a cognizable cause of action.

24. The "Notice of Demand to Cure Material Breach of the lease" (attached as Exhibit "D" to City's Complaint) is defective.  The City relies on Paragraph 16 of the lease which requires the Lessee to adhere to all "pertinent" federal, state, and local laws. The City artfully avoided pleading how the alleged violation of the Kesslers is "pertinent."  The truth is that using 55-gallon drums as supplemental flotation is not treated as a violation of "pertinent law" because this practice has always been allowed by the Marina, and continues to be a common practice at the Marina today with the full knowledge of the City, even while they continue their persecution of the Kesslers. Justice demands that the City should be compelled to plead under oath in the Complaint that the Kesslers' alleged violation is routinely enforced as a violation of the lease, or the Complaint must fail as the fraud that it is.

25. The City's Complaint, even when incorporating all the Exhibits and Ordinances referenced, fails to advise the Kesslers or any reasonable person what they must do to comply with the City's arbitrary and continually varying demands.

26. Failure of the City to provide a clear and specific opportunity to correct the alleged violation is itself a violation of Chapter 162 of Florida Statutes and has deprived the Kesslers of due process.

27. Accordingly, this case must be dismissed for insufficiency of process and failure to state a cause of action.

**WHEREFORE,** The Kesslers respectfully request that the City's Complaint be **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CAUSE OF ACTION, INSUFFICIENCY OF PROCESS AND LACK OF SUBJECT MATTER JURISDICTION.**

## FIRST MOTION TO STRIKE IMPERTINENT ALLEGATION IN THE COMPLAINT

28. In paragraph 7 of the City's Complaint, the City alleges a violation of 14-185 "arising out of the unseaworthy condition of the Defendant's boat." Actually, the Kesslers own a floating home, not a vessel or boat. "Seaworthy" is a term applied to boats or vessels, not floating homes, in accordance with a 2013 ruling by the United States Supreme Court. Furthermore, the word "seaworthy" does not even appear in City Ordinance 14-185, and is impertinent and inapposite, and paragraph 7 must be stricken.

**WHEREFORE,** The Kesslers respectfully request that paragraph 7 of the City's Complaint be **STRICKEN.**

## MEMORANDUM OF LAW IN SUPPORT

The Kesslers have resided in the community of floating homes in the City of Key West at the City controlled Garrison Bight Marina since 2004 (not 2007 as stated in the Complaint). The land and bay bottom where the Marina is located was conveyed to the City by the State of Florida in a deed which restricted the use to public purposes. There are, in addition, a series of interlocal agreements protecting the rights of the liveaboard slip Lessees which are beyond the scope of the current Motions before the Court for consideration. By the use of local funds and a series of Federal and State Grants, the City developed the parcel into a Marina including about 100 "liveaboard slips." By virtue of the acceptance of the Federal Grants, the City has voluntarily subjected themselves to a series of Federal regulations many of which are codified in the Code of Federal Regulations.

Over the years, the regulation of floating homes has resulted in a variety of litigation. One Code Enforcement case near Miami, Florida went all the way to the United States Supreme Court. (*Lozman v. City of Riviera Beach, Fla., 133 S. Ct. 735 - Supreme Court 2013)*

The Supreme Court recognized that floating homes are not navigable vessels, and should not and are not subject to admiralty law, nor do they need to be "seaworthy" like a vessel on the high seas. Instead, the Court indicated that these homes should be subject to local building code regulation, much like a home on

land.   In the case of Key West, the floating home regulation is brief and skeletal, and rarely enforced. (For example, while the Key West Code requires a Certificate of Occupancy, we understand that we are one of the few who ever obtained one). While the portion of the home above water is hardly distinguishable from a home on land, and familiar to Code Enforcement Officers, the portion of the home below water is something in which the typical Code Enforcement Officer is ill-equipped to evaluate, a problem which is made worse by the fact that it is often inaccessible.

The floating homes have been built in a large variety of configurations, and there are no clear engineering nor scientific design standards.  The City has codi-fied some commonsense general requirements for the flotation but has failed to set objective standards to measure compliance with these Codes.

We have lived in our floating home since 2004, and received a Certificate of Occupancy in 2004 which certified among many other systems, the adequacy of our flotation. Since our occupancy began, there have been 8 named hurricanes which came close enough to Key West to cause at least tropical storm conditions. We had no problem with our flotation in any of those storms and have made no material changes to our flotation since receiving the Certificate of Occupancy. This is no small testament to the safety of our home, as over the years we have watched as many other floating homes sink, list, or flip over.  All these years, our home has never been in any distress whatsoever.

Despite the fact that they had no indication or probable cause to believe a problem existed, the City has persecuted the Kesslers by demanding a series of arbitrary repairs. The City has tried to portray us as refusing to make requested repairs or otherwise uncooperative – nothing could be further from the truth. We have documents which reflect the many efforts we have made with City officials to find out what they want. We have put a skirt around our flotation and strapped it. We have removed barrels. We have purchased and installed large pontoons. Even though the City has refused to give us consistent and clear guidance about how to comply with their wishes, we have unilaterally spent hundreds of labor hours and thousands of dollars hoping to satisfy them or get guidance of what more we need to do to satisfy them. It has been a frustrating process as City officials disagree with one another over what needs to be done.  It is impossible for us to objectively comply because there is no objective standard.

This problem started in August, 2016 when the City decided to demolish and rebuild the pier we were living on. The rebuilding contractor was also required to tow and relocate the residents to temporary new locations. The Contractor sent a diver to examine the flotation of the homes for issues. His letter to the City (which was not shared with us), identified six of the seventeen homes on our pier as having loose items as part of their flotation.  This was not surprising because the use of

items for supplemental flotation is an extremely common practice which has always been well known to the City.  On our home, the primary flotation consists of four 4'x4'x18' pontoons which are heavily fixed to the structure and are incapable of adjustment.  For this reason, if a heavy piece of furniture is placed in one corner of the house, you may want to place a small extra float under this corner to bring the home level again.  This had been done by many boat owners for years, frequently with 55-gallon PVC barrels, and was a known and accepted practice by the City.

When this concern was informally brought to our attention, we tried to find out what method of securing barrels was acceptable. Instead of an answer, we were told the contractor refused to move our house. Despite these concerns by the contractor, we ourselves towed our home, first to its temporary location and then back to the new pier without any problems. Due to the fact that the concerns of the contractor did not materialize, we thought this matter was moot. We were surprised that in September of 2016, we received the first Notice of Code Violation. We immediately reached out to the Code Inspector to get clarification about what he wanted us to do. His response was that he didn't know and would have to speak to Marina staff to find out. This was inappropriate because the Marina should not be involved in Code Enforcement.  Next, we were advised to speak with the Head of

Code Enforcement and the Chief Building Official for questions concerning compliance. The Head of Code Enforcement referred us to the Chief Building Official. We met with the Chief Building Official who told us he did not understand the violation, and could not give us guidance. Much later, the same City lawyer who advised us to consult with the Chief Building Official told us not to speak to the Chief Building Official apparently after the Chief Building Official did not support his position. These are just a few examples of the City's confusion. We could continue listing these conflicting instructions, but will limit them at this juncture for the sake of brevity.

We didn't want to "fight City Hall" and have demonstrated that we have been and would be willing to correct any reasonable alleged defect, even if such defect isn't technically correct, just to end the fighting and litigation.

Despite our continuous expensive and labor-intensive attempts to satisfy the City, on December 14, 2016, the City filed a Notice of Administrative Hearing for Code Enforcement. Because of the history of the City's continuous and persistent violation of the Kesslers' Constitutional and Due Process rights the Kesslers filed and served a Notice of Removal to the United States District Court (Exhibit "A").

It is an axiomatic principle that once Notice of Removal is filed and served, the jurisdiction of the state court absolutely ceases and the state court has a duty not to proceed any further in the case. Any procedural or substantive challenge to

the removal must be made to the Federal Court via a request to remand or relief from the stay.

> 28 U.S.C. § 1446 (d) Notice to adverse parties and State court. — Promptly after *the filing of such notice of removal* of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which ***shall effect the removal and the State court shall proceed no further unless and until the case is remanded***. (emphasis ours)

"Hence, after removal, the jurisdiction of the state court absolutely ceases and the state court has a duty not to proceed any further in the case. Any subsequent proceedings in state court on the case are *void ab initio*." *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1254-55 (11th Cir. 1988) . *Tr. v. Dixon*, 723 S.E.2d 495, 496 (Ga. Ct. App. 2012) "…Any proceedings in a state court after removal of a case to federal court are null and void and must be vacated…"

Section 1446 provides that the removal of the case to the Federal Court is immediate, and the stay is automatic and does not require court approval. Upon removal, the case should not be in the state court for any purpose until and unless the case is remanded. In fact, the state court is expressly prohibited from proceeding further until and unless the case is remanded to the state court. Until remand, state court actions are not sanctioned. They are prohibited.

Despite this clear prohibition, the City and Special Magistrate continued their persecution of the Kesslers in blatant violation of the automatic stay. The City

appeared to be laboring under the misapprehension that "removal" requires some type of Federal Court approval. This is patently incorrect.  Under 28 U.S.C. § 1446 as it exists today, removal does not require permission or an order by the Federal Court, nor can a Federal Court 'grant' or 'deny' removal since removal is automatic. The Removal can be contested, however, by a motion to remand. Substituting "notice" for "petition" in 1988 and again in 1991 underscores Congress' intent that removal (and divestment of state court jurisdiction) be effective immediately upon the defendant's filing of a notice of removal in federal court, providing written notice to adverse parties, and filing a copy of the notice with the clerk of the state court. *See* 28 U.S.C.A. § 1446(d).

Florida's district courts of appeal have uniformly held that "[a]fter removal, the jurisdiction of the state court ceases until the case is remanded to state court, and any state court proceedings on the case after removal but prior to remand are *void ab initio*." Remova Pool Fence Co. v. Roth, 647 So. 2d 1022, 1024 (Fla. 4th DCA 1994) (concluding a state court's order awarding attorney's fees, "which was entered prior to remand," was void); *see Gunning v. Brophy*, 746 So. 2d 468, 468 (Fla. 2d DCA 1997) ("The removal to Federal court divested the state circuit court of jurisdiction. The state court's order dated February 27, 1997 [after removal but prior to remand], was *void ab initio*."

While the case was pending in Federal Court, the Kesslers filed a Motion for

Contempt of the automatic stay. The Kesslers also filed a Motion to Dismiss the

action with the Federal Court. The City never responded to the Motion to Dismiss,

and the Court issued an Order on June 30, 2017 which DISMISSED WITH

PREJUDICE (Exhibit "B") the City's Code Enforcement action against the

Kesslers. The City has not appealed the decision nor requested any relief from the

judgment. The Federal Court decision is a final adjudication of this matter for all

purposes. In addition, the <u>Federal Court has not remanded</u> the case nor any portion

thereof. There is no jurisdiction whatsoever of the matter in the state court, since

the case has never been remanded.

> "...From the viewpoint of the state court, the removal statute gives the
> state court a clear demarcation of when state court jurisdiction ceases,
> and when (if ever) the state court may resume jurisdiction. Under the
> statute, state court jurisdiction ceases when a copy of the notice of
> removal is filed in the state court. <u>28 U.S.C. § 1446(d)</u>. <u>Thereafter, the</u>
> <u>state court is allowed to resume jurisdiction of the removed case if,</u>
> <u>and only if, the federal court grants permission by entering an order of</u>
> <u>remand.</u> The statute is explicit on this point. There was no order of
> remand in this case. Consequently, the trial court could not resume
> jurisdiction of the removed action, and therefore the jurisdiction of the
> State Court over the issues in controversy has not been restored..."
> *PRESTON v. ALLSTATE INS. CO, 627 So.2d 1322, 1323 (Fla. Dist.*
> *Ct. App. 1993)*

Therefore, the instant case must be dismissed for lack of jurisdiction. If that

were not enough, and since there is a final adjudication, the case must also be

dismissed under the principles of either *res judicata, collateral estoppel* and/or the "law of the case" doctrine.

## CONCLUSION

The Kesslers' home is in jeopardy through no fault of their own. They have been living with this nightmare for more than a year. The Federal Court made it abundantly clear when the case was **DISMISSED WITH PREJUDICED** that the abuse the Kesslers are suffering must come to an end. It is hard to imagine a more egregious abuse of process than occurred in the case. The blatant disregard by the City of the Kesslers' basic Constitutional rights, of the federal court, and of state law should signal the Court that we are not dealing with parties who respect the rule of law. This is a case which should have ended with the Federal Court decision. The Kesslers respectfully request that this Court Dismiss the Complaint with Prejudice.

Respectfully submitted,

DATED:  August 15, 2017      _____

Stuart Kessler/Pamela Kessler

PLAINTIFF'S EXHIBIT #4

Filing # 67326453 E-Filed 01/31/2018 03:16:03 PM

IN THE COUNTY COURT OF THE 16TH JUDICIAL CIRCUIT OF THE
STATE OF FLORIDA IN AND FOR MONROE COUNTY

CITY OF KEY WEST, FLORIDA,
A Municipal Corporation,
        Plaintiff,

vs.                                      CASE NO: 2017-CC-185-K
                                               JUDGE MARK WILSON

STUART KESSLER AND
PAMELA KESSLER,
        Defendant.
_____/

## NOTICE OF VOLUNTARY DISMISSAL

      COMES NOW the Plaintiff, City of Key West, by and through its undersigned attorney pursuant to Rule 1.420(a), Florida Rules of Civil Procedure, who hereby dismisses all claims pending in the above cause without prejudice.

      RESPECTFULLY SUBMITTED this _31st_ day of January, 2018.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by E-Service to Stuart Kessler and Pamela Kessler PO Box 2730 Key West, Fl 33045 (Email: skessler@kesslerlegal.com ), this 31st day of January, 2018.

GEORGE B. WALLACE
Assistant City Attorney
City of Key West, Florida
P.O. Box 1409
Key West, Florida 33041-1409
(305) 809-3770
FBN: 0340189
gwallace@cityofkeywest-fl.gov

PLAINTIFF'S EXHIBIT #5

Sailfish Pier– Benthic Resource Assessment



**Figure 1.** Location of the proposed pier replacement at Sailfish Pier, Garrison Bight Marina, Key West, Florida.

PLAINTIFF'S EXHIBIT #6



□ **CORPORATE OFFICE**
3390 TRAVIS POINT ROAD
SUITE A
ANN ARBOR, MI 48108
(734) 996-9500
FAX: (734) 996-8480

□ **REGIONAL OFFICE**
5509 5ᵗʰ Ave #3

KEY WEST, FL 33040
(305) 292-7889
FAX: (305) 292-7717

□ **REGIONAL OFFICE**
4485 ENTERPRISE AVE
NAPLES, FL 34101
(239) 774-3130
FAX: (239) 774-4266

July 22, 2016

Doug Bradshaw, Director of Port & Marine Services
City of Key West
201 William St
Key West, FL 33040

Subject: Garrison Bight Sailfish Pier Vessel Relocation

Dear Mr. Bradshaw

Douglas N. Higgins, Inc. with the assistance of Key West Harbor Service conducted an underwater survey of all of the vessels on Sailfish Pier yesterday to make sure they were seaworthy before we start to relocate them to Kingfish Dock. There were six vessels (Slip #6, #7, #10, #14, #15 & #16) that were found to have unsecure floatation items under the vessels that need to be removed or secured with the approval of the contractor before the vessels can be safely moved. The unsecure floatation items range from plastic barrel of many different sizes standing upright or laying on there side, tote boxes filled with air, Styrofoam different sizes and shapes, HDPE tubes and boxes of many different sizes. The concern with these unsecured items is that there's a very good possibility that they will come out from under the vessel once we start to move causing the vessel to shift or become unstable that causing the vessel to strike other vessels, docks and piles, damage property inside the vessel; or cause the vessel to capsize or sink.

There are structural integrity concerns along with the placement of the floatation items under the vessels in slip #15 & #16. This could prohibit the floatation items from staying secure and this would cause the vessel to be unseaworthy.

Thanks for your attention on this matter.

Sincerely,

Paul R Waters
Regional Manager/Florida Keys

PLAINTIFF'S EXHIBIT #7

2/15/2019                    Everyone.net email - Powered by Everyone.net(TM)

**Stuart Kessler <skessler@kesslerlegal.com> 02/15/19 10:24AM**

  

Print          Cancel

| From: | "Jorge L. Lopez" <jlopez@cityofkeywest-fl.gov> |
|---|---|
| To: | "skessler@kesslerlegal.com" <skessler@kesslerlegal.com> |
| Cc: | "Jim J. Young" <jjyoung@cityofkeywest-fl.gov>, Karen Olson <kolson@cityofkeywest-fl.gov>, David Hawthorne <dhawthorne@cityofkeywest-fl.gov>, George Wallace <gwallace@cityofkeywest-fl.gov>, Doug Bradshaw <dbradshaw@cityofkeywest-fl.gov> |
| Received-On: | 09/23/16 7:01 PM |
| Subject: | RE: Case 16-1247 |
| More... | |

Thank you for your response,  I'll get together with the city marina staff so they can tell me if this is enough or anything else is needed.

I'll get back with you as soon as they confirm with me.

Thank you! Have a great weekend.

JL

**From:** skessler@kesslerlegal.com [mailto:skessler@kesslerlegal.com]
**Sent:** Friday, September 23, 2016 5:33 PM
**To:** Jorge L. Lopez <jlopez@cityofkeywest-fl.gov>
**Subject:** Re: Case 16-1247

Mr lopez,

Thank you for the response. I have already made substantial progress on completing a "skirt" around the outside of the houseboat. The portion I have completed faces away from the dock and may not be visible unless you are in a boat.  If completion of the skirt is all that is required, I can finish very quickly.

You should be advised that my primary flotation are large fiberglass pontoons, which meet the code requirements cited in your letter in all respects.  The barrels provided are for a margin of safety and leveling purposes

Only.  Accordingly, I do not think your Code enforcement letter accurately states a violation or extant conditions.

In an effort to cooperate, please let me know if any additional work , besides the skirt,would be required to satisfy concerns.3

While I will cooperate with your instructions, I have grave concerns that this code enforcement action may be an effort to assist a private contractor in evading the terms of its contract with the City. For all concerned, I hope that I am mistaken.

2/15/2019                    Everyone.net email - Powered by Everyone.net(TM)

Accordingly , I respectfully request that you formally withdraw your Code enforcement letter, and that we work together informally to resolve any concerns. Thank you for your consideration and I look forward to your response.

*Sent from my LG V10, an AT&T 4G LTE smartphone*

------ Original message------

**From:** Jorge L. Lopez

**Date:** Fri, Sep 23, 2016 3:52 PM

**To:** stu kessler;

**Cc:** David Hawthorne;

**Subject:**Case 16-1247

Good evening Mr. Kessler,

I received your email in regards to the code violation. From my understanding the City marina notified the tenants who needed to repair and secure the floating devises on the vessels.

Please let me know how much time you need so we can work together to resolve this matter.

Thank you for your time!

**Jorge Lopez**

**Code Compliance Officer**

**Wednesday-Sunday**

CODE COMPLIANCE DEPARTMENT- 3139 RIVIERA DRIVE- KEY WEST, FLORIDA 33040

T: (305) 809-3735 - C: (305) 797-6564 – jlopez@cityofkeywest-fl.gov

**Under Florida law, e-mail addresses are public records. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this entity. Instead, contact this office by phone or in writing. F.S. 668.6076.**

PLAINTIFF'S EXHIBIT #8

2/15/2019

Everyone.net email - Powered by Everyone.net(TM)

**Stuart Kessler <skessler@kesslerlegal.com> 02/15/19 11:01AM**

 Print      Cancel

| | |
|---|---|
| **From:** | Ronald Ramsingh <rramsingh@cityofkeywest-fl.gov> |
| **To:** | Stu Kessler <skessler@kesslerlegal.com> |
| **Received-On:** | 07/05/17 3:25 PM |
| **Subject:** | RE: Case 16-1247 Order of Final Dismissal |
| **More...** | |

No sir. The city is not. I feel that rhe order dismissing the notice of removal is sufficient.

Thanks,

Ron.

Sent from my cellular phone. Please pardon any typographical errors.

-------- Original message --------
From: Stu Kessler <skessler@kesslerlegal.com>
Date: 2017/07/05 2:58 PM (GMT-05:00)
To: Ronald Ramsingh <rramsingh@cityofkeywest-fl.gov>
Subject: Re: Case 16-1247 Order of Final Dismissal

Are you interested in jointly seeking clarification of the Order from the Judge?

Sent from my iPad

On Jul 5, 2017, at 1:51 PM, Ronald Ramsingh <rramsingh@cityofkeywest-fl.gov> wrote:

> Stuart,
>
> I am not advising that city staff vacate the finding and order, nor the fines. We have to agree to disagree as to the posture of your federal efforts. Please be advised that a daily fine continues to run.
>
> Thanks,
> Ron
>
>
>
> Sent from my cellular phone. Please pardon any typographical errors.
>
>
> -------- Original message --------
> From: Stu Kessler <skessler@kesslerlegal.com>
> Date: 2017/07/05 12:27 PM (GMT-05:00)
> To: Ronald Ramsingh <rramsingh@cityofkeywest-fl.gov>
> Cc: Debbie Millett-Fowley <dmillett@cityofkeywest-fl.gov>, Doug Bradshaw <dbradshaw@cityofkeywest-fl.gov>, "Jim J. Young" <jjyoung@cityofkeywest-fl.gov>, "Jorge L. Lopez" <jlopez@cityofkeywest-fl.gov>, gwallace@cityofkeywest.com, David Hawthorne <dhawthorne@cityofkeywest-fl.gov>, Samuel Kaufman <skaufman@cityofkeywest-fl.gov>
> Subject: Re: Case 16-1247 Order of Final Dismissal
>
> Ron,

PLAINTIFF'S EXHIBIT #9



**MARITIME RESOURCES**
4 Bamboo Terrace   Key West   Florida 33040   305-304-3151   swansonmaritime@gmail.com

City of Key West                                                    24 Jan. 2017
Ronald Ramsingh
Case # 16-1247, S. Kessler

Dear Mr. Ramsingh,

Back in November of 2016 while working in the water in and around Dolphin Pier within the City Marina I took the opportunity to swim under the Floating Structure moored at the end of the Dock. It turned out to be Stuart Kessler's Floating Structure.
It is in my humble and professional opinion: Stuart Kessler's Floating Structure is not in compliance of the City of Key West Code of Ordinances Sec.14-185 Compartmentation and flotation devices.
I have spent the last 12 years here in Key West - building, repairing, managing and salvaging Floating Structures moored in the City of Key Wests, Garrison Bight Marina and other locations.

After my dive by and review of photos and video documentation, I noticed the following:
   1. Vertical Plastic Barrels – many without fill caps, stacked without any form of attachment, strapping or bulkhead structure.
   2. PVC Panels or exterior skirts flexing, minimal fixation to structure.
   3. Stacked Barrels resting on minimal pads upon floor joists.

Sincerely,

C. Swanson

Capt. Cristian Swanson

PLAINTIFF'S EXHIBIT #10

1/31/2019                                Everyone.net email - Powered by Everyone.net(TM)

**Stuart Kessler <skessler@kesslerlegal.com> 01/31/19 11:12AM**



Print      Cancel

| From: | Ronald Ramsingh <rramsingh@cityofkeywest-fl.gov> |
|---|---|
| To: | "skessler@kesslerlegal.com" <skessler@kesslerlegal.com> |
| Cc: | "Jim J. Young" <jjyoung@cityofkeywest-fl.gov>, "Jorge L. Lopez" <jlopez@cityofkeywest-fl.gov> |
| Received-On: | 01/24/17 2:56 PM |
| Subject: | Stuart Kessler Floating Structure |
| More... | |

📎 CKW - GB -Ram Letter 1-24-17.rtf SCAN.pdf (362 KB) Download | one_storage | Print to FedEx Office

Mr. Kessler,


I met with Mr. Swanson today. He has prepared the attached letter in preparation for tomorrow's hearing and will also be testifying live.


Thanks,

Ron Ramsingh

PLAINTIFF'S EXHIBIT #11

# THE CITY OF KEY WEST
## Code Compliance Division
P.O. BOX 1409
KEY WEST, FL 33041
**(305) 809-3740**

# NOTICE OF ADMINISTRATIVE HEARING

DATE: December 14, 2016
RE: CASE NUMBER 16-1247

CERTIFIED MAIL RECEIPT#:    7003 0500 0002 2662 2841

To:
Stuart Kessler
Po Box 2730
Key West, FL 33045

Subject Address: Floating Structure/Home @
1801 N Roosevelt Blvd D8
Key West, FL 33040

**TAKE NOTICE** that the City of Key West Code Compliance Division has requested the City of Key West Special Magistrate to conduct an administrative hearing regarding code violation(s) reported to you by **NOTICE OF CODE VIOLATION** concerning the above noted subject address. You were noticed that your property is in violation of the City of Key West Code of Ordinances for the following reason(s):

**Count-1: Sec.14-185 Compartmentation and flotation devices.**

**(a)***Compartmentation of devices.* Watertight pontoons, floats, hulls or other devices used to keep the floating home afloat shall be fitted with transverse or longitudinal watertight bulkheads which provide compartmentation sufficient to keep the fully loaded floating home afloat with positive stability with any one compartment flooded. This subsection may be waived by the chief building official upon certification by a competent architect or engineer familiar with such devices that design, materials and construction of the hull or other floatation device is such that the possibility of rupture is extremely remote.

**(b)***Construction generally.* Flotation devices shall be structurally sound and securely fastened to the floating home superstructure. Flotation devices shall be constructed so that access to each compartment is readily available from the first floor level of the completed floating home. The external surfaces of all flotation devices shall be watertight and thoroughly protected from corrosion from saltwater, solvents and weather.

**(c)***Bilge pump.* Where permanent-type flotation such as Styrofoam or plastic foam is not provided, an adequate portable bilge pump shall be maintained in proper working order.

**(d)***Holding tank.* Flotation and decking shall provide access to the sewage pump.

**(e)***Material.* All material, such as decking, siding and subflooring, which is subjected to moisture or water splash shall be of a type not adversely affected by moisture or shall be treated.

Exh A

To wit: Responding to this complaint I conducted a site visit on August 31, 2016. I observed and photographed the vessel located at the slip #8 of Dolphin pier. The owner of this vessel was notified by the duck master that this vessel needs to be repair and secure the floating devices. As December 14, 2016 there has been no progress towards compliance.

**Corrective action: Please repair and secure the floating devices of this floating structure/home.**

In accordance with Florida Statutes § 162 and Code of Ordinances, City of Key West, § 2-631 through § 2-647, The City of Key West has scheduled a hearing to be held at **Old City Hall, 510 Greene Street, Key West, Florida at 1:30 P.M. on:**

## January 25, 2017

The Chambers will be open at 1:00 PM. These proceedings may be televised.

The purpose of this hearing is to determine if a violation(s) exists, the appropriate action to be taken, if any is required, and if any fines or penalties are to be imposed. **YOU ARE REQUESTED TO APPEAR AT THIS HEARING** to present evidence and/or testimony to show cause, if any, why you should not comply with City Ordinances. **YOUR FAILURE TO APPEAR MAY RESULT IN A FINE OR PENALTY BEING IMPOSED AGAINST YOU AND A LIEN BEING IMPOSED UPON YOUR PROPERTY.**

You have a right to have an attorney present at the hearing. If an attorney represents you, your attorney must file written notice with this office prior to the hearing date.

If you intend to request a continuance from the Hearing Date set out above you must submit a written request for a continuance addressed to the Special Magistrate and mailed to PO Box 1409, Key West, FL 33041 or delivered to the Special Magistrate's Legal Analyst at 3139 Riviera Drive, Key West, FL 33040. All requests must be received at least five (5) working days prior to the Hearing Date set out above. If the request is not received five (5) working days prior to the Hearing Date you or your attorney must appear on the Hearing Date to petition the Special Magistrate for a continuance. If any continuance is granted this will not stay discovery and all records previously requested must be supplied to the City or formally objected to.

**Be advised that, if you decide to appeal any decision of the Special Magistrate in this code enforcement hearing, you shall be responsible to ensure that a verbatim record of the proceedings of this code enforcement hearing is made, such that any evidence and testimony upon which an appeal may be based can be submitted to the appellate court.**

If you are found to be in violation of City of Key West Ordinances, administrative costs in the amount of $250.00 may be levied for administrative recovery for prosecution and investigation in addition to levied fines associated with the violation(s). **Failure to pay these costs will result in a lien against the property in violation.**

**PER FLORIDA STATUTES SECTION 162.09, YOUR FAILURE TO CORRECT THE VIOLATION (S) MAY RESULT IN THE IMPOSITION OF A FINE OF UP TO $250.00/DAY, AND $500.00/DAY FOR A REPEAT VIOLATION. IF THE VIOLATION (S) IS IRREPARABLE**

OR IRREVERSIBLE, A FINE OF UP TO $5000.00 MAY BE IMPOSED BY THE SPECIAL
MAGISTRATE. FINES MAY BE IMPOSED ON A PER DAY/ PER VIOLATION BASIS.

Jorge Lopez
Code Compliance Officer
City of Key West
(305)809-3735 Desk
(305)797-6564 Cell
jlopez@cityofkeywest-fl.gov
Working Schedule Wednesday-Sunday