UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEW WEST DIVISION

Case Number: 19-10030-CIV-MARTINEZ

PAMELA and STUART KESSLER,
Husband and wife,

      Plaintiffs,

v.

CITY OF KEY WEST, *et al.*,

      Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

**THIS CAUSE** comes before the Court on Defendants City of Key West (the "City"), Ronald Ramsingh, George Wallace, James K. Scholl, Greg Veliz, Jim Young, Doug Bradshaw, Karen Olson, and Mark Tait's (the "Individual Defendants") Motion for Summary Judgment ("Defendants' Motion"), (ECF No. 100); Plaintiffs' Cross Motion for Summary Judgment (the "Kesslers' Cross Motion"), (ECF No. 106); and the City's Motion to Strike, (ECF No. 108.) After considering the relevant briefing, the record, and being otherwise advised in the premises, the Court rules as follows.

**I.**　**FACTUAL BACKGROUND**[1]

The following pertinent facts are undisputed unless otherwise noted. When the facts are in dispute, they are taken in the light most favorable to the nonmovant. *See Chapman v. Am.*

---

[1]     The Court incorporates the background as set for in the Eleventh Circuit's opinion on the Court's Order on Defendants' Motion to Dismiss, (ECF No. 81). The Court adds citations to that background and supplements it with additional allegations from the complaint and Defendants' SMF as relevant on remand.

*Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). The Court notes that the Kesslers failed to respond to Defendants' Statement of Material Facts ("Defs.' SMF"), (ECF No. 101.) Local Rule 56.1(c) provides that

> [a]ll material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by the properly cited record evidence, and (ii) any exception under Fed. R. Civ. P. 56 does not apply.

Because the Kesslers provided no response to Defendants' SMF and by operation of the Local Rules, this Court deems admitted—for the purpose of this Order only—those facts for which Defendants provided sufficient evidentiary support. *See* Fed. R. Civ. P. 56(e)(3); S.D. Fla. L.R. 56.1(c); *Rives v. Lahood*, 605 F. App'x 815, 817–18 (11th Cir. 2015).

Between 2004 and 2017, the Kesslers' primary residence was a floating home docked at a marina operated by the City in a community of about 100 floating homes. (Second Amended Complaint ("SAC") ¶¶ 1, 54, ECF No. 51.) The Kesslers leased their spot at the marina—a "boat slip"—from the City. (Defs.' SMF ¶ 2.) The marina is located on property conveyed to the City from the State of Florida "in a deed which restricted the use to public purposes." (SAC ¶ 1 n.5.) In addition to the lease, the Kesslers contend that "a series of interlocal agreements and prior Court settlements protect[] the rights of Liveabroad Slip Lessees." (*Id.*) The City disputes that it was a party to any interlocal or settlement agreements. (Defs.' SMF ¶ 11.) By 2018, however, the Kesslers had lost their home, their boat slip, and much of their personal property. (SAC ¶ 42.) The gist of their lawsuit is that the City unreasonably escalated a minor code violation relating to their floating home, abused the legal process to terminate the lease and get rid of them, and indirectly caused the loss of their home.

The alleged code violation arose in 2016, when a contractor hired by the City to replace the pier where the Kesslers' floating home was moored began the process of temporarily relocating

floating homes. (SAC ¶¶ 11–13, 158–66; ECF No. 1 at 75.)² During this process, the contractor notified the City of safety concerns related to "numerous barrels loosely secured" to the underside of the Kesslers' floating home. (ECF No. 1 at 45.) The City determined that this setup violated § 14-185 of the City Code and, after informal attempts to resolve the matter with the Kesslers failed, gave notice of an administrative hearing before a special magistrate in January 2017. (SAC ¶¶ 19, 23; *see also* ECF No. 1 at 41.)

Instead of appearing at the hearing, which they believed would be futile, the Kesslers filed a notice purporting to remove the proceedings to federal district court. (*See* ECF No. 1 at 49.) The City ignored the notice of removal and proceeded with code-enforcement proceedings, which resulted in a finding that the Kesslers' floating home violated § 14-185. (SAC ¶ 23.) The City eventually responded in federal court in June 2017, at which time the district court "dismissed" the case "with prejudice" for lack of subject-matter jurisdiction. (ECF No. 1 at 49–51.)

Thereafter, the City filed a complaint in state court to evict the Kesslers based on the code violation. (*See generally* ECF No. 1 at 53–69.) The Kesslers filed a motion to dismiss, arguing that the code-enforcement proceedings were void due to the automatic stay upon removal to federal court and that the federal court had "dismissed" the underlying code violation. (*Id.*) At a hearing in January 2018, a state judge indicated he was inclined to grant the motion to dismiss. (SAC ¶ 32.) Not long after, the City voluntarily dismissed its complaint. (*Id.* ¶ 33; *see also* ECF No. 1 at 71.)

Meanwhile, in September 2017, the Lower Keys and Key West were struck by Hurricane Irma. (SAC ¶ 50.) By that time, the Kesslers had voluntarily removed the loosely secured

---

² The Kesslers incorporated the exhibits attached to their initial complaint into the operative Second Amended Complaint, (*see* SAC at 3.) Accordingly, the Court considers those exhibits when ruling on the Motions for Summary Judgment.

3

barrels—what they call "safety reserve floatation"—from under their home. (*Id.* ¶ 49.) Nevertheless, unlike many other floating homes at the marina, the Kesslers' home survived the storm with minimal damage. (*Id.* ¶¶ 51–52.) But, on December 3, 2017, it was struck by a large piece of floating debris, which punctured a "catastrophic hole" in one of the home's four primary integrated pontoons and caused it to sink. (*Id.* ¶ 54; Defs.' SMF ¶ 5.)

After dismissing the eviction case, the City gave notice on January 23, 2018, that it intended to terminate the Kesslers' lease. (SAC at 6; Defs.' SMF ¶ 6.) The 2007 lease agreement between the City and the Kesslers was for a term of twelve months. (ECF No.101-1 ¶ 1.) Under the agreement, the Kesslers leased slip number "Sailfish 16" for a monthly rate. (*Id.* ¶¶ 1–2.) According to the agreement, if the City decided "not to renew the tenancy, it shall provide [the Kesslers] both thirty (30) days' notice and the option of a hearing before the Port Advisory Board." (*Id.* ¶ 8.) But the City advised Plaintiffs that any hearing they requested would be conducted by the City Manager because the Port Advisory Board, which had consisted of citizen volunteers, had been disbanded on January 9, 2009. (SAC at 6; Defs.' SMF ¶ 4.) Nevertheless, the Kesslers requested a hearing and attended. (SAC at 6; Defs.' SMF ¶ 7.) The City Manager issued a decision terminating the lease effective March 1, 2018, because the Kesslers failed to remove the sunken structure and related debris. (*Id.* at 7; Defs.' SMF ¶ 8.) In September 2018, the City shut down the Kesslers' utility accounts for the boat slip, removed the Kesslers' remaining personal property, and gave the boat slip to a new tenant. (*Id.* ¶ 42; Defs.; SMF ¶¶ 8, 10.)

In February 2019, the Kesslers sued the City and various City officials, requesting a permanent injunction to put the Kesslers in possession of their former boat slip (Count I); to obtain damages under 42 U.S.C. § 1983 for the deprivation of property without procedural due process (Count II), a taking of property for a public purpose without just compensation (Count III), a deprivation of property in violation of substantive due process (Count IV) and equal protection

(Count V); and to obtain damages under § 1983 against City officials in their individual capacities. (SAC ¶¶ 58–170.) The City Defendants moved to dismiss the Complaint for failure to state a claim on which relief can be granted. (ECF No. 58.) Specifically, Defendants moved to dismiss the takings claims, (Count III & Count VII), for (1) failure to exhaust all remedies at the state level and because (2) the Kesslers lacked a property interest in their slip, and any claims against the City would be for breach of contract, not a taking. (*Id.* at 6).

Magistrate Judge Alicia Otazo-Reyes issued a Report and Recommendation ("R&R"), recommending that the initial motion to dismiss be granted with prejudice. (ECF No. 63.) Specifically, as to the takings claim, the R&R recommended that the claims be dismissed for failure to exhaust state court remedies. (ECF No. 63 at 9–10.) The Court affirmed and adopted the R&R. (ECF No. 67.) The Kesslers appealed. (ECF No. 69.)

The Eleventh Circuit affirmed in part and vacated and remanded in part. (ECF No. 81 at 16.) As to all claims except the Kesslers' takings claims, (Counts III and VII), the Eleventh Circuit affirmed. (*Id.*) With respect to the takings claims, the Eleventh Circuit concluded that the Court erred by dismissing the takings claim based on the failure to exhaust all remedies at the state level. (*Id.* at 13–14; *see also* ECF No. 63 at 10.) Rather than determine whether dismissal was appropriate based on Defendants' additional arguments, the Eleventh Circuit "prefer[ed] the district court address these issues in the first instance." (ECF No. 81 at 14.) Following the Eleventh Circuit's mandate, the Defendants submitted their Amended Motion to Dismiss, (ECF No. 82), renewing their argument that the Kesslers lacked a property interest in their lease, which this Court denied. (ECF No. 90.) Now, both the Kesslers and Defendants move for summary judgment as to the takings claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may show that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Rule 56 requires granting summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant is entitled to a judgment as a matter of law when the "nonmoving party has failed to make a sufficient showing on an essential element of [their] case." *Id.*

"The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0621MASRSWV15BND*, 766 F. App'x 795, 798 (11th Cir. 2019). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

When the moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, Rule 56 "requires the nonmoving party to go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts showing that there is a*

*genuine issue for trial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added) (cleaned up). "[C]onclusory allegations without specific supporting facts have no probative value." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

## III. DISCUSSION

In their Motion for Summary Judgment, Defendants argue, among other things, that the Kesslers' claim is governed by contract law, not the just compensation law, and that the Kesslers had no private property interest; that the Individual Defendants cannot be held liable for a Fifth Amendment just compensation taking claim; and that the Individual Defendants are entitled to qualified immunity. (*See generally* Defs.' Mot.) In their Response to Defendants' Motion, (ECF No. 104), the Kesslers concede that they "do not oppose the dismissal of this matter against the [I]ndividual Defendants." (Resp. ¶ 4.) Accordingly, summary judgment is **GRANTED** in favor of the Individual Defendants. The Kesslers argue in their Cross Motion that there was no legally sufficient termination of their property. (*See generally* Kesslers' Cross Mot.) However, because of their belated submission, the City moves to strike the Kesslers' Cross Motion. This Court shall first address the City's Motion to Strike.

### A. The City's Motion to Strike

On December 22, 2022, this Court entered its Scheduling Order requiring the parties to file their respective motions for summary judgment on or before May 15, 2023. (ECF No. 94 at 5.) Defendants filed their Motion for Summary Judgment on May 15, 2023, (ECF No. 100), while the Kesslers belatedly filed their Response to Defendants' Motion for Summary Judgment, which also included their Cross Motion for Summary Judgment, on June 12, 2023, almost a month after the deadline. (ECF Nos. 104, 106.) The Court notes that the Kesslers never moved for an extension of time or for leave to file an untimely motion for summary judgment. Additionally, the Kesslers did

7

not submit an opposing memorandum of law to the Motion to Strike as required by Rule 7.1 of the Southern District of Florida. Local Rule 7.1(c) makes clear that the failure to respond to a motion "may be deemed sufficient cause for granting the motion by default." *See Sauve v. Lamberti*, 247 F.R.D. 703, 704 (S.D. Fla. 2008) (granting by default motion to dismiss and motion to strike for failure to serve an opposing memorandum of law in violation of Local Rule 7.1(c)).

Accordingly, this Court **GRANTS** the City's Motion to Strike, (ECF No. 108), and the Kessler's Motion for Summary Judgment, (ECF No. 106), is **STRICKEN**. *See Destra v. Demings*, 725 F. App'x 855, 859 (11th Cir. 2018) (holding that the district court did not abuse its discretion when it struck the defendants' motion for summary judgment as untimely, even though it was filed only one day late).

### B. The City's Motion for Summary Judgment

The Takings Clause of Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "private property" shall not be "taken for public use, without just compensation." U.S. Const. amend. V. "The Takings Clause protects private property; it does not create it." *Givens v. Ala. Dep't of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004). To determine whether a property interest is protected, the Court looks to "existing rules of understandings that stem from an independent source such as state law." *Id.* (quoting *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64 (1988)). Notably, "[t]he existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally protected property interest." *Key West Harbour Dev. Corp. v. Key West*, 987 F.2d 723, 728 (11th Cir. 1993). But, as noted in the Eleventh Circuit's opinion on this matter, "'a month-to-month tenancy at will is a compensable property interest under Florida law,' which may continue in certain circumstances despite a state landlord giving 'legally sufficient notice.'" (ECF No. 81 at 17) (quoting *Ward v. Downtown Dev. Authority*, 786 F.2d 1526, 1528–29 (11th Cir. 1986)).

Although the 2007 lease was for a term of twelve months and thus expired well before the alleged taking occurred, the Kesslers continued to pay monthly rent for the boat slip until the City terminated their lease. (Defs.' SMF ¶ 3.) The lease therefore turned into a month-to-month tenancy, which, as explained earlier, is a property interest under Florida law. *See Ward*, 786 F.2d at 1526. In addressing this issue in its opinion on this matter, the Eleventh Circuit noted the following:

> In asserting that the City took their property interest in continuing to remain in the boat slip or transferring the lease, the Kesslers point not only to their lease agreement, which contemplated review of the City's lease-termination decision by a neutral board of citizens. But also they allege that the City collected 5% of private lease transfers and that other "interlocal agreements" and court settlements recognize and protect the lessees' rights. These allegations lend some credence to their claim that more than mere notice was required to terminate a lease at the marina and that their property interest was grounded in more than just the lease agreement. While the allegations ultimately may not be sufficient to state a plausible takings claim—we express and imply no opinion on the matter—we cannot say that remand for the district court to address these issues in the first instance would be futile.

First, the review of a lease-termination decision by a neutral board of citizens as set forth in the 2007 lease agreement was in reference to the Key West Port Authority which was dissolved in 2009, and therefore, as the City points out, "had not existed for almost a decade prior to the termination of the Kesslers['] month to month tenancy." (Defs.' Mot. at 11; Defs.' SMF ¶ 4.) The City nonetheless gave the Kesslers' timely notice and offered a hearing to be conducted by the City Manager, which the Kesslers attended. (Defs.' SMF ¶¶ 6–7.) Next, the Kesslers allege that their tenancy was protected by more the just the lease agreement. Although they allege that a "series of interlocal agreements and prior Court settlements protect[] the rights of Liveaboard Slip Lessees," (SAC ¶ 1 n.5), which the City denies, the Kesslers failed to produce any evidence that supports such allegations nor did they refute the City's assertion that it was never a party to such interlocal agreements. (*See* Defs.' Mot. at 11; Defs.' Reply at 9, ECF No. 107; Defs.' SMF ¶ 11.)

9

Accordingly, this Court holds that the Kesslers have failed to sufficiently allege that the City took their slip without just compensation and summary judgment is therefore **GRANTED** in favor of the City.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Summary Judgment, (ECF No. 100), is **GRANTED**.
2. Defendant's Motion to Strike, (ECF No. 108), is **GRANTED**.
3. Plaintiffs' Cross Motion for Summary Judgment, (ECF No. 106), is **STRICKEN**.
4. Final judgment in Defendants' favor will be entered by separate order.
5. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 26 day of March 2024.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record